**Marcella MOORE, Plaintiff,**

v.

**FLORIDA BANK OF COMMERCE, Defendant.**

No. C–3–85–709.

United States District Court, S.D. Ohio, W.D.

Nov. 21, 1986.

Carl Genberg, Columbus, Ohio, and Christ Theodor, Xenia, Ohio, for plaintiff.

David T. Knight and Craig B. Glidden, Tampa, Fla., Winfield E. Kinney, III, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 25); JUDGMENT TO BE ENTERED FOR DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

The motion of the Defendant herein, seeking an order of this Court granting summary judgment in its favor and against the Plaintiff (Doc. # 25), is sustained, and judgment for the Defendant and against the Plaintiff will be entered accordingly.

This action was brought by the Plaintiff, Marcella Moore, against the Defendant, Florida Bank of Commerce (FBC), to recover the difference between the advertised value and the actual value of an automobile won by the Plaintiff in a raffle. The promotional literature as well as the raffle ticket listed the object of the raffle, a handcrafted replica of a 1937 Cord Phaeton (Cord), as having last sold for $65,000. After being informed that she had won the raffle and after accepting delivery of the Cord, the Plaintiff discovered that the automobile had a value of approximately $25,000.

The Plaintiff brought suit in this Court under 28 U.S.C. § 1332 (diversity jurisdiction) and sought relief on two grounds. Count I of the Plaintiff's Complaint sets forth a claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et seq.* Count II of the Complaint sets forth a claim for breach of contract.

It must be noted at the outset that the Defendant, Florida Bank of Commerce, was not the sponsor of the raffle. Rather, the raffle was sponsored by the Dayton District Academy of Osteopathic Medicine (Academy). The Plaintiff chose not to sue the Academy. Accordingly, the Academy is not a party to this lawsuit.

FBC is a Florida banking institution with its place of business in Clearwater, Florida. During 1981, FBC, as collateral for a loan made to Antique Autos of America, Inc., accepted from Antique Autos the pledge of two Cord Replicars, one of which is the subject of this lawsuit, based upon the representation of Antique Autos that the cars were selling for up to $65,000 each. Antique Autos subsequently defaulted on the loan and filed a voluntary bankruptcy petition. FBC successfully recovered the two Cord Replicars from the bankruptcy trustee.

In an effort to recoup its loss, FBC made attempts to sell the Cords. Included among these attempts was the placement of an advertisement in the "Robb Report," a publication that advertises the sale of expensive or unique automobiles.[1] During the latter part of 1983, Mary Theodoras, a member of the Board of Directors of FBC and a member of the Academy, volunteered to inquire whether the Academy had an interest in buying the Cord from FBC and using it as a prize in a fund-raiser for one of the Academy's charitable projects. The Academy responded favorably, and in 1984 entered into an option agreement with FBC to purchase the Cord for the sum of $40,373.85. The option was subsequently exercised by the Academy.

The Academy began promoting the raffle and, after receiving the Cord from FBC, placed it on display. The Academy also used promotional materials which duplicated the language, including the alleged last sale price, used by FBC in its advertisement placed in the Robb Report.

The Plaintiff purchased a raffle ticket for $250, and at the drawing held in June, 1984, her ticket was selected as the winner. Thereafter, FBC delivered the title to the Cord to the Academy, which in turn delivered it to the Plaintiff. The Plaintiff later discovered the value of the Cord to be approximately $25,000, and brought this lawsuit.

## Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court in deciding a motion for summary judgment must construe the evidence and all inferences drawn therefrom in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### (A) *Ohio Consumer Sales Practices Act*

■ In its Motion for Summary Judgment (Doc. #25), the Defendant contends that it is entitled to summary judgment because as a matter of law, FBC is not a

---

**1.** The advertisement placed by FBC in the "Robb Report" read:

1981 CORD

Handcrafted factory demo. One of only seven built by Southeastern Replicars. Last sale $65,000.00. Built on Olds Toranado 350 CID V–8 and running gear. Front-wheel drive is original. Looks identical to 1937 812 Cord Phaeton. Includes automatic transmission, power steering, brakes, windows, seats, hood and deck, air conditioning and AM/FM radio. Yellow/red interior. Perfect. Priced at $49,500.00

"supplier" within the meaning of Ohio Rev. Code § 1345.01(C). The Court agrees.

In her Complaint, the Plaintiff alleges that FBC is a "supplier" as defined by Ohio Rev.Code § 1345.01(C), and that therefore FBC's role in the raffle violated Ohio Rev. Code § 1345.02(A), which provides:

(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction.

A supplier as defined in Section 1345.01(C) is "a sellor, lessor, assignor, franchisor, or other person *engaged in the business of effecting or soliciting consumer transactions,* whether or not he deals directly with the consumer." (emphasis added).

■ Although no Ohio court has defined the level of business activity required for a finding that one is "engaged in the business of" effecting or soliciting consumer transactions, the Defendant urges and the Court agrees that the phrase implies more than one isolated sale, especially when that sale is not within the seller's usual course of business. The phrase "engaged in the business of" is commonly used in statutory schemes and has generally been held to connote continuous or regular activity, rather than a singular or isolated sale. *See United States v. Tarr,* 589 F.2d 55 (1st Cir.1978) (the words "to engage in the business of" strongly imply more than one isolated sale or transaction); *Fillippo v. S. Bonaccurso & Sons, Inc.,* 466 F.Supp. 1008 (E.D.Pa.1978) ("being engaged in an activity requires more than a single act or transaction or occasional participation"); *UFI-TEC, S.A. v. Carter,* 20 Cal.3d 238, 571 P.2d 990, 142 Cal.Rptr. 279 (1977) (the phrase "engaged in the business of" connotes a certain regularity of participation).

The affidavit of C. Richard Ross, the Chief Executive Officer and Chairman of the Board of FBC, filed in support of the

Defendant's motion, indicates that FBC was not engaged in any other sales of automobiles or any other conduct which involved effecting or soliciting consumer transactions [with automobiles]. The Plaintiff has not produced any Rule 56 material regarding this issue and thus has failed to raise a genuine issue of fact on this point.

For the foregoing reasons, the Court finds that no genuine issue of material fact exists which would indicate that the Defendant's conduct is covered under the Consumer Sales Practices Act. Accordingly, the Defendant is entitled to summary judgment as to Count I.

### (B) *Breach of Contract*

Count II of the Plaintiff's Complaint alleges that "the sponsors of the raffle were acting as agents on behalf of their undisclosed principal—Defendant, Florida Bank of Commerce of Clearwater, Florida." The Court finds that no genuine issue of material fact exists to support the Plaintiff's claim of an agency relationship between the Academy and FBC.

■ When the existence of an agency relationship is in issue, the burden of proving such agency is upon the party who asserts it. *Gardner Plumbing, Inc. v. Cottrill,* 44 Ohio St.2d 111, 338 N.E.2d 757 (1975). The test as to whether a person is the agent of another is the right of control which the purported principal exercises over its purported agent. *Ross v. Burgan,* 163 Ohio St. 211, 126 N.E.2d 592 (1955); *Haluka v. Baker,* 66 Ohio App. 308, 34 N.E.2d 68 (1941). In order to avoid summary judgment, the Plaintiff must show that a genuine issue of fact exists regarding the control that FBC allegedly exercised over the Academy. On this issue, the Plaintiff has offered a portion of the deposition of E. Joseph Strickler [2] in which Mr. Strickler testifies that FBC, when it sent the title to the Cord to the Academy, endorsed the title in blank. The Plaintiff

**2.** Although the deposition of Mr. Stickler was read and considered by the Court, it should be noted that the deposition was not filed with the Court nor was it properly authenticated by way of an affidavit. As such, the deposition was not proper material under Rule 56.

contends that this shows that the Academy was never to acquire title to the automobile, and that title was meant to flow directly from FBC to the ultimate winner. The Court is not persuaded by this argument.

■ The fact that FBC transmitted an open title does not in any way infer that FBC had control over the Academy. The Court further finds that the affidavits of Mr. Ross and Mr. Strickler do not create any issue of fact concerning control of the Academy by FBC. Accordingly, the Defendant's Motion for Summary Judgment as to Count II is sustained.

### Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment is sustained in its entirety and judgment is to be entered for the Defendant and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.