OPINION
{¶ 1} Appellants Tom Henning and Kevin Henning, DBA Henning 
Sons, appeal a judgment of the Muskingum County Court of Common Pleas awarding appellee Temple Oil and Gas Company $2855.50 on an action on an account, and dismissing their counter-claim for breach of contract and violation of the Ohio Consumer Sales Practices Act:
 {¶ 2} "I. THE TRIAL COURT MISINTERPRETED THE LAW, MISAPPLIED THE LAW TO ADMITTED FACTS AND ENTERED JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO ITS DECEMBER 12, 2001 DECISION AND JUDGMENT ENTRY HOLDING THAT TOM HENNING AND KEVIN HENNING FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT TEMPLE OIL GAS CO., INC. AND ROBERT SWINGLE WERE "SUPPLIERS" AS DEFINED BY R.C. § 1345.01(C).
 {¶ 3} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ENTERED JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT HELD THE HENNINGS HAD NOT PROVEN TEMPLE'S BREACH OF CONTRACT BY A PREPONDERANCE OF THE EVIDENCE.
 {¶ 4} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING JUDGMENT TO PLAINTIFF-APPELLANT TEMPLE ON ITS COMPLAINT ON ACCOUNT. PLAINTIFF FAILED TO PROVE EACH OF THE NECESSARY ELEMENTS OF ITS CASE AND THE MANIFEST WEIGHT OF THE EVIDENCE ESTABLISHED THAT TEMPLE HAD BREACHED ANY CONTRACT WITH THE HENNINGS AS TO THE JUNE-JULY 2000 TRANSACTION."
 {¶ 5} Appellee is a business engaged in servicing oil and gas wells, primarily for Oxford Oil Company and Artex Oil Company, who are engaged in production and sale of petroleum products. Appellee also at times services wells for individuals engaged in production and sale of petroleum products. Appellee owns and operates approximately 92 wells, and sells its own natural gas production to Columbia Gas, and its oil production to Argon. Robert Swingle is the owner and operator of appellee.
 {¶ 6} Appellants operated a company which dealt in heating and air conditioning products and services. On September 16, 1999, appellants provided appellee with a business estimate for installation of a new furnace. During the course of this business relationship, in the fall of 1999, appellant Tom Henning approached appellee about performing service work on an oil well located on his farm. Appellant Kevin Henning lived on a property adjoining his father's property. Appellants raised cattle and horses for sale, and also raised hay to feed the cattle. Tom Henning had purchased the oil well, which he used to provide natural gas to heat his home and his son Kevin's home, and also sold oil from the well. In 1999, the well stopped all production of oil and natural gas. Prior to that time, appellants had experienced water coming into the well.
 {¶ 7} Tom Henning discussed his options regarding removing water from the well formation, and attempting to re-start oil and gas production. Henning represented to appellee that the primary reason for work on his well was to resume oil production, as the cost of oil was increasing at that time. Appellee represented to appellant that there was a reasonable chance the well would never produce oil or gas again. He advised appellants that the well would need to be pumped to remove water on the formation, which could potentially require a period of one to three years of pumping. Appellee represented to Tom Henning that a packer could be installed to attempt to resume production in the well. He warned Henning that there was a risk that installation of the packer may be unsuccessful. A packer is a steel pipe containing a rubber outside casing that is inserted and lowered several thousand feet into an existing well, and turned and locked into place, in order to prevent water from entering the well from a source above the packer. Appellee also advised Henning about the option of using untested pipe, which may have holes in it, thus permitting water to leak into the well, or using tested pipe, which would cost additional money per foot of pipe. Tom Henning told appellee he wanted to install the packer, and wanted to use untested pipe.
 {¶ 8} Prior to any work, appellee provided appellant with an estimate for placing a packer in the well for a sum of $13,178.55, specifically stating that untested pipe would be used. In January of 2000, appellee installed a packer in appellant's well.
 {¶ 9} On February 25, 2000, appellant Kevin Henning delivered two checks, one drawn on the business account and one drawn on his personal account, in the amount totaling $13,178.55. This was the first time appellee became aware of Kevin Henning's interest in the Henning well.
 {¶ 10} After three months of pumping water from the well, Kevin Henning contacted appellee, and was informed that he should continue removing water from the well formation, and to hook up his pump to an electrical line rather than using a liquid propane fuel pump. Kevin Henning admitted to appellee that there were traces of oil in the water, and occasional evidence of gas vapors, indicating the well was beginning to recover.
 {¶ 11} However, in June of 2000, Kevin Henning requested that appellee return to the well and attempt to remove the water. Appellee represented that he would charge appellants hourly for work performed, at $80.00 per hour, plus equipment. Appellee recommended against removing the packer, and made no guarantees that the procedure would make the well productive.
 {¶ 12} Appellee's crew was initially able to lower the packer, but could not bring it to the surface. When they were unable to remove the packer, appellants asked appellee to attempt to remove the packer by turning in a different direction. While appellee explained that this was not the proper way to remove the packer per the manufacturer's instructions, when appellants persisted, appellee finally gave in and attempted to remove the packer in the manner requested by appellants. At this point appellee could not raise or lower the packer.
 {¶ 13} After attempts to remove the packer were unsuccessful, appellee had the well swabbed, producing traces of oil, natural gas, and salt water. Salt water indicates that the water is being removed from the well formation, and is not coming from a surface source. After the July 2000 attempt to remove the packer, appellee had the water which was withdrawn from the well tested, and discovered that the water was salty, was coming from the Clinton formation, and the packer was therefore properly installed. Despite these findings, and the fact that the water level in the well was declining, appellant Kevin Henning ordered appellee off the property.
 {¶ 14} On July 20, 2000, appellee sent appellant Tom Henning an invoice for the July well services in the amount of $3040.50. After Kevin Henning spoke with appellee, the bill was adjusted to delete two hours of time, and was re-invoiced for $2955.50. On August 28, 2000, appellee received a check from appellants for $100. Appellee then sent appellants another invoice for the balance, which appellants refused to pay.
 {¶ 15} Appellee filed the instant action, seeking to recover the $2855.50 due for the unsuccessful attempt to remove the packer. Appellants counter-claimed, seeking damages for breach of contract, alleging that appellee performed both the original installation and the removal attempt in a unworkmanlike manner, and also sought damages for violation of R.C. 1345.09, the Ohio Consumer Sales Practices Act. The case proceeded to bench trial in the Muskingum County Court of Common Pleas. At trial, Tom Henning was unable to remember any of the conversations surrounding the formation of the contract with appellee, as at the time of the trial, he was suffering from Alzheimer's disease. Following trial, the court found that appellee was not a supplier as defined by R.C. 1345.01(C), and dismissed the claim for violation of the Consumer Sales Practices Act. The court found that appellee established that it provided $2855.50 worth of work to appellants for which it had not been paid. The court further found that appellee was ordered off of appellants' property while performing the work, and therefore any claim that the work was not finished or was performed incorrectly must fail. The court dismissed the counter-claim, and ordered appellants to pay the remaining balance due on the contract.
 I {¶ 16} Appellants first argue that the court erred in finding that appellee was not a "supplier" as defined by R.C. 1345.01(C).
 {¶ 17} R.C. 1345.01(C) defines supplier as a seller, lessor, assignor, franchiser, or other person engaged in the business of the effecting or soliciting of consumer transactions. Consumer transaction means a service to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. R.C. 1345.01(A).
 {¶ 18} Although no Ohio court has defined the level of business activity required for finding that one is engaged in the business of effecting or soliciting consumer transactions, the phrase has been held to imply more than one isolated sale, especially when that sale is not within the seller's usual course of business. LeVeck v. Al's MustangStable (1991), 71 Ohio App.3d 700, 703, citing Moore v. Florida Bank ofCommerce (S.D.Ohio 1986), 654 F. Supp. 38, 41. The phrase "engaged in the business of" is commonly used in statutory schemes and has generally been held to connote continuous or regular activity. Id.
 {¶ 19} In the instant case, there was evidence that appellee's business was nearly exclusively involved in servicing oil wells for Oxford Oil Company, Artex Oil Company, or other businesses which sell oil and natural gas for profit. The other aspect of the business was operating its own wells to produce oil or gas for sale for profit. While appellants testified that they intended to re-activate the well in order to supply free natural gas to their homes for personal use, there was evidence that in the past they had sold the oil for a profit. Further, the evidence was undisputed that appellee provided services only on the well itself, and not on the lines or other equipment used to transport the gas to appellants' homes for heating purposes.
 {¶ 20} The first assignment of error is overruled.
 II {¶ 21} Appellants argue that the court's finding that they failed to prove their counterclaim for breach of contract is against the manifest weight of the evidence. Appellants argue that appellee knew the problem with the well was caused by another hole drilled in the area, which could not be fixed by placing a packer in the well. Appellants also argue that appellee's own expert testified that installing a packer was not proper, as the water had been in the well for over a year, and the well was too deep for a packer to work.
 {¶ 22} A judgment supported by some competent, credible evidence going to all the elements of the case will not be reversed by a reviewing court. C.E. Morris Company v. Foley Construction Company (1978),54 Ohio St.2d 279.
 {¶ 23} Robert Swingle testified that prior to installing the packer, he explained to appellant Tom Henning that there was a good chance the well would never produce oil or gas again, despite his efforts to activate the well. Swingle also explained to Henning that the well would need to be pumped for one to three years to remove water from the formation. He specifically told Tom Henning that it was Henning's decision, referring to the risks that installation might be unsuccessful in making the well productive again. Appellee's expert, Graham Robb, testified that if a landowner with a non-productive well wanted to try to salvage a well in the Clinton formation that had water in it, the only option other than drilling a new well would be to use a packer to try and re-generate production.
 {¶ 24} The judgment finding that appellants failed to prove appellee breached its contract with them is not against the manifest weight of the evidence. There is evidence in the record to support a finding that the risks of failure were explained to appellants, and they chose to go ahead with the installation of the packer.
 {¶ 25} The second assignment of error is overruled.
 III {¶ 26} Appellants argue that the court erred in granting judgment for appellee for recovery of the charges to remove the packer. Appellants argue they presented no evidence of the reasonableness of the services or of the amount of the charges, that appellee attempted removal of the packer improperly according to the instructions of the manufacturer, and appellee failed to perform the contract as the packer was ultimately not removed.
 {¶ 27} The evidence reflected that the charge for removal of the packer was agreed upon by the parties as $80 per hour, plus equipment. As there was a contract setting forth the charges, appellee did not need to prove reasonableness of the services or amount. Further, the evidence reflected that Mike Brown, who was on the site during the removal of the packer at the request of appellant Kevin Henning, instructed appellee's employees to turn the packer to the right in an attempt to remove it. Robert Swingle testified that this was contrary to the instructions, as if they turned it to the right, they could unscrew the pipe. He explained the problem, and provided Brown with a copy of the instructions, yet Brown insisted that they attempt to turn it the wrong direction. Swingle testified that they finally gave in to Brown, and turned the packer the wrong direction. After this attempt, the packer would not move up or down. Swingle also testified that when Kevin Henning requested that they remove the packer, he tried to talk Henning out of it, telling him that the thing to do was to pump the well for a longer period of time. There was evidence presented that the packer was working prior to the attempted removal. Swingle clearly testified that he explained to Kevin Henning that if he wanted to pull the packer out, it would be against Swingle's best judgment, and it would cost $80 per hour. Tr. 48.
 {¶ 28} The court's judgment finding in favor of appellee on the claim for the amount due for the attempted recover of the packer is not against the manifest weight of the evidence.
 {¶ 29} The third assignment of error is overruled.
 {¶ 30} The judgment of the Muskingum County Court of Common Pleas is affirmed.
By Gwin, P.J., Wise, J., and Edwards, J., concur.
topic: manifest weight — breach of contract.