GARDNER PLUMBING, INC., ET AL. *v.* COTTRILL ET AL., APPELLEES; DOLLAR FEDERAL SAVINGS & LOAN ASSN., APPELLANT.

(No. 74-1042—Decided December 10, 1975.)

---

²In so holding, it is not necessary to decide appellant's other propositions of law.

Messrs. *Weinberger, Grad, Wolf & Hoy* and *Mr. Leo Weinberger,* for appellees.

*Messrs. Beirne & Wirthlin, Mr. C. R. Beirne, Mr. Michael A. Fulton* and *Mr. John A. Pierce,* for appellant.

*Per Curiam.* Appellant initially contends that R. C. 1311.04 does not impose a duty upon a mortgagee, prior to disbursing funds of a construction loan to the mortgagor, to require affidavits of subcontractors and materialmen indicating the amount of unpaid claims owing to them.

R. C. 1311.04, in pertinent part, provides:

"Whenever any payment of money becomes due from the owner, part owner, or lessee, or whenever the original contractor desires to draw any money from the owner, part owner, or lessee, under their contract, or whenever any mortgagee makes a written demand, such contractor shall make out and give to the owner, part owner, lessee, or mortgagee, or his agent, a statement under oath, showing the name and address of every laborer in his employ who has not been paid in full and also showing the name and address of every subcontractor in his employ, and of every person furnishing machinery, material, or fuel, and giving the amount which is due or to become due to them, or any of them, for work done, or machinery, material, or fuel furnished to him, which statement shall be accompanied by a certificate signed by every person furnishing machinery, material, or fuel to him."

In construing the applicable provisions of the statute, the Court of Appeals stated:

"Dollar Federal's failure to require such affidavits from Taylor and Associates amounts to negligence and left the Cottrills exposed to the danger of having liens attached to their real estate. Dollar Federal may not now, in claiming to be a mere mortgagee, abrogate that statutory duty and impose it upon the Cottrills."

An examination of the above statutory language reveals that no mandatory duty is imposed upon the mortgagee to make a written demand upon the contractor. By making the relevant parts of R. C. 1311.04 applicable to a mortgagee "whenever any mortgagee makes a written demand," the General Assembly gave the mortgagee discretionary power to demand affidavits from subcontractors. It follows however, that it is not imperative that the mortgagee exercise this discretion.

Additional support for appellant's position is found in R. C. 1311.14, which states, in part:

" * * * Sections 1311.01 to 1311.68, inclusive, of the Revised Code do not require the mortgagee to ascertain by affidavit or otherwise the respective claims of contractors, subcontractors, laborers, or materialmen, or to determine priorities among lien claimants.

"The mortgagee is not responsible for a mistake of the owner in determining priorities, or for any failure of the payee properly to distribute funds paid on the written order of the owner.

" * * *

"This section shall, as to mortgages contemplated by this section, control over all other sections of the Revised Code relating to said mechanic's, materialmen's, contractor's, subcontractor's, laborer's, and all liens that can be had under Sections 1311.01 to 1311.68, inclusive, of the Revised Code, and shall be liberally construed in favor of such mortgagees, a substantial compliance by such mortgagees being sufficient."

As they relate to R. C. 1311.04, these provisions of R. C. 1311.14 were intended to relieve a mortgagee from any statutory duty to make a written demand for affidavits in order to ascertain claims of subcontractors.

Contrary to the finding of the trial court, the Court of Appeals further determined that an agency relationship was established between appellees and appellant upon the execution of the mortgage and note, and that such relationship was reinforced by the oral assurances given by the lender at that time. Hence, appellees submit that appellant was negligent in disbursing the mortgage funds without exercising proper care to see that claims of subcontractors were satisfied.

To hold appellant liable on an agency theory for negligently disbursing the funds of the mortgage, appellees must establish by competent evidence that such a relationship existed, the burden of proving the agency being upon the party who asserts it. See *Union Mutual Life Ins. Co.* v. *McMillen* (1873), 24 Ohio St. 67; *Troietto* v. *G. H. Hammond Co.* (C. A. 6, 1940), 110 F. 2d 135; *Greep* v. *Bruns* (1945), 160 Kan. 48, 159 P. 2d 803; *Judson* v. *Bee Hive Auto Service Co.* (1931), 136 Ore. 1, 297 P. 1050. In the case at bar, the testimony before the trial court on this question was not only conflicting,[1] but at times was unfavorable to appellees' position.[2] Furthermore, appellant did not make direct payments to the contractor, but drafted each check "to the order of Charles F. Cottrill and Norma Jean Cottrill," thereby giving appellees the option of refusing to endorse the checks over to the contractor. Upon a review of the

---

[1]Mr. Cottrill testified that prior to the execution of the mortgage, he was assured by Mr. Langdon (the manager of the Fairfield branch office of appellant) that before any disbursements were made, the house would be inspected and everything would be "right" and "correct," and "in order."

However, Langdon's testimony was to the effect that the assurances he made to the Cottrills were related solely to the bank's policy of inspecting the house to see if work had progressed far enough to warrant a disbursement. He denied telling the Cottrills that things would be "right" or "correct" before disbursements.

[2]During the cross-examination of Mr. Cottrill, the following exchange occurred:

"By the Court: What led you to believe that they were going to check into whether or not payments were made?

"A. Nothing ever led me to believe they were because it was never discussed by them, they never discussed it. . . ."

record in the instant case, it is our conclusion that no agency relationship was established from which appellant could be held liable for the damages sustained by appellees.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN and CELEBREZZE, JJ., dissent.

CELEBREZZE, J., dissenting. The relative structure of the facts requires me to disagree with the judgment of reversal. While I am constrained to agree with the interpretation rendered regarding R. C. 1311.04, I do not necessarily concur that the absence of mandatory language therein alleviates a mortgagee from any responsibility to its borrower as demonstrated in this case. My dissent concerns itself with the relationship between the mortgagors (Cottrills) and the mortgagee (Dollar Federal Savings & Loan Association). The record clearly indicates that when the loan transaction was reduced to writing that document contained a charge variously labeled ''Construction Fee'' or ''Construction Loan Fee.'' Depending on where it appears in the record, the purpose of this ''Construction Fee'' varies frequently, even in its description by the same witness.

However, the exhibits show, in writing, that prior to each disbursement, except the first, Mr. Langdon, the branch manager of the Fairfield Office of Dollar Federal, executed an ''Inspection Report'' containing, among other information, the name of the contractor, the work completed to that date, and the percentage of the loan ready for advancement. The first disbursement of $5,000 was on the authority of one Robert Duley, whose identity remains a mystery, but whose report authorized a 10 percent advancement, or approximately $3,850, considerably less than the $5,000 paid. On each of the disbursements, the builder,

who would contact the bank, not the mortgagors, requested a specific amount and then either more or less than that amount would be paid after Mr. Langdon made his inspection. The checks, while made payable to the Cottrills, bore in three instances the special indorsement, "Pay to the order of Taylor and Associates"—the builder, who received the checks from Dollar Federal and took them to the Cottrills for their signatures.

It would appear that the "Construction Fee" was paid to the bank for the purpose of representing the borrowers' interests when disbursing the loaned funds. Dollar Federal was in the business of making construction loans and was theoretically skilled, as well as schooled, in the procedure and had an obligation to use its expertise in protecting the Cottrills' interests. It is impossible for this writer to conceive of the relationship between Cottrills and Dollar Federal as other than that of principal to agent.

In the case of *Bollinger* v. *Livingston State Bank & Trust Co.* (La. App. 1966), 187 So. 2d 784, the court, at page 787, said:

"* * * Unquestionably, the bank owed plaintiff a duty in this case. The legal relations existing between plaintiff and the bank were created by the delivery of the collateral mortgage note * * * to the bank and by the bank's undertaking to advance money and supervise construction as to quality and quantity as the agent of plaintiff. The duty which the bank owed was that of a fiduciary and agent, for this is the nature of the relationship created between them."

1 Mechem on Agency (2d Ed.), Section 1233, at page 904, states:

"* * * In practically every case wherein the principal has suffered loss, the principal may sustain an action of tort against the agent based upon the latter's breach of duty."

It has been argued that the case of *Falls Lumber Co.* v. *Heman* (1961), 114 Ohio App. 262, does not apply to the case at bar. However, the following language therein seems particularly appropriate: "A savings association is

liable in an action of tort for any loss suffered by the mortgagor which is proximately caused by the failure on the part of the savings association to exercise ordinary care in an agency undertaken to disburse funds of the mortgagors.''

The facts in this case disclose that all draws were initiated by the builder and were made after the mortgagee's inspections. Though the checks were payable to the mortgagors they were delivered to the builder, three of the four checks in question with a special indorsement to the builder, but all of which were taken by the builder to the mortgagors for their signatures.

It can be argued that the mortgagors did not have to sign the checks. However, they did, and they did so on their reliance of the mortgagee's skill in protecting their interests. After all, Dollar Federal was not rendering its services gratuitously.

While the case of *Speights v. Arkansas Sav. & Loan Assn.* (1965), 239 Ark. 587, 393 S. W. 2d 228, may be distinguished by the manner in which the agency relationship was created between the mortgagor and mortgagee, it bears a striking similarity to the case at bar. In that case too, the builder absconded, but the court, at page 591, held the savings and loan association which controlled the distribution of the money liable for not using ''reasonable diligence or care to protect the interest'' of the mortgagors.

If the only way the Cottrills' interests could have been protected was by way of the procedure outlined in R. C. 1311.04, then the mortgagee should have, in the exercise of due care, availed itself of that statute

CORRIGAN, J., concurs in the foregoing dissenting opinion.