**GRIGSBY, Appellee,**

v.

**O.K. TRAVEL, Appellant.**

[Cite as *Grigsby v. O.K. Travel* (1997), 118 Ohio App.3d 671.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960496.

Decided March 12, 1997.

*Oma Grigsby, pro se.*

*Fred Miller* and *Clem Pater III*, for appellant.

PAINTER, Judge.

The question presented in this appeal is whether a travel agent is liable to a traveler when a tour promoter fails to deliver a tour purchased by the traveler through the travel agent. The travel agent failed in its duty to make reasonable inquiries into the financial stability of the tour promoter after being put on notice that the tour promoter was not properly registered in Ohio. For failing to perform its duties as the agent of the traveler, the travel agent must bear the loss sustained by the traveler.

During a shopping trip at Forest Fair Mall in August 1995, Oma Grigsby, the plaintiff-appellee, saw an advertisement for a tour of Israel on the window of O.K. Travel's office. Grigsby gave O.K. Travel ("O.K."), the defendant-appellant, a $200 deposit for the tour, which was to leave in November, and paid the balance of $937 in September. The tour was to leave from New York, so Grigsby bought a round-trip airline ticket to New York to meet the tour plane. She did not purchase this ticket through O.K.

Upon receiving Grigsby's payment, O.K. retained its commission and sent payment to Trinity Tours ("Trinity"), the promoter of the tour of Israel. About a week to ten days before Grigsby was to leave for the tour, O.K. attempted to confirm the flight times with Trinity. O.K. was unable to contact Trinity, however, and soon realized that the tour promoter was defunct. O.K. notified Grigsby, and they both attempted to contact John Bray at Trinity. Bray spoke with Grigsby and promised her a refund, but the promise was never kept. O.K. then contacted the American Society of Travel Agents ("ASTA"), which tried to intervene and aid Grigsby. However, the ASTA was unsuccessful in reaching Trinity, and notified O.K. that Trinity did not carry the financial bond required by the state of Ohio.

Grigsby sued O.K. in small claims court, and won a judgment of $1,312. The municipal court approved the magistrate's decision. The magistrate grounded O.K.'s liability in alternate theories that (1) O.K. was negligent, and (2) O.K. violated the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.* O.K. brings three assignments of error.

In its first assignment of error, O.K. asserts that the trial court erred in applying the Consumer Sales Practices Act to the transaction. We hold this assignment moot in light of the disposition of the second assignment of error.

In its second assignment of error, O.K. asserts that the trial court erred in holding it liable to Grigsby because an agent acting on behalf of a fully disclosed principal is not liable on a contract between the principal and a third party. Though the preceding statement embodies hornbook law,[1] the relationship of the parties is not as asserted by O.K.—it is exactly the opposite. O.K. argues that it was an agent of Trinity and is not liable to Grigsby because on the back of a form supplied to Grigsby, O.K. notified her that it was acting "only as an agent in all matters connected with the making and securing of reservations for transportation, accommodations, [and] tours." O.K. believes that this language somehow relieves it of any liability to Grigsby.

---

1. See Reuschlein & Gregory, The Law of Agency and Partnership (2 Ed.1990) 188–190, Section 118.

The party asserting the existence of an agency relationship bears the burden of proof.[2] A principal and agency relationship exists "when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks."[3] But "the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called."[4] Consequently, regardless of the contract language, an agency relationship could have existed between O.K. and Grigsby.

A travel agent is a special agent for the traveler.[5] O.K. again refers to the fine print on the back of the form given to Grigsby, which states that the agency does not "own, manage, control, or operate any transportation vehicle, hotel, restaurant, insurance company, tour or sightseeing company," and argues that this language altered any agency relationship it had with Grigsby and informed her that O.K. was acting as an *agent for Trinity*. But most independent travel agents do not own their own tours, and instead sell the trips and tours of other operators to secure a commission and make a profit. Customers come to travel agents because these agents hold themselves out as having knowledge about how to travel to places "foreign" to the traveler. For this reason, travel agents are the *special agents of the traveler* for securing a trip. This is true even though the agent's compensation may be paid by a company to whom the agent steers business.[6]

A travel agent is more than a ticket supplier. Travel agents have become a professional segment of today's complex travel world.[7] Accordingly,

---

2. *Gardner Plumbing, Inc. v. Cottrill* (1975), 44 Ohio St.2d 111, 73 O.O.2d 390, 338 N.E.2d 757.

3. *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 173, 24 OBR 403, 404–405, 494 N.E.2d 1091, 1094.

4. *Am. States Ins. Co. v. Lauf* (Dec. 19, 1985), Putnam App. No. 12–85–1, unreported, 1985 WL 4659, quoting 3 American Jurisprudence 2d (1962) 430–431, Agency, Section 21.

5. See *Gelfand v. Action Travel Ctr., Inc.* (1988), 55 Ohio App.3d 193, 563 N.E.2d 317; *Barker v. N. Shore Travel, Inc.* (Apr. 2, 1987), Cuyahoga App. No. 51974, unreported, 1987 WL 9134.

6. See *Barton v. Wonderful World of Travel, Inc.* (1986), 28 Ohio Misc.2d 6, 28 OBR 203, 502 N.E.2d 715; *Douglas v. Steele* (Okla.App.1991), 816 P.2d 586; *Maurer v. Cerkvenik–Anderson Travel, Inc.* (App.1994), 181 Ariz. 294, 890 P.2d 69; *Markland v. Travel Travel Southfield, Inc.* (Mo.App.1991), 810 S.W.2d 81; *Rodriguez v. Cardona Travel Bur.* (1986), 216 N.J.Super. 226, 523 A.2d 281; *Pellegrini v. Landmark Travel Group* (1995), 165 Misc.2d 589, 628 N.Y.S.2d 1003; *Cicchiello v. Reney Tours Plane Broker, Inc.* (May 3, 1996), Conn.Super. No. CV940460805S, unreported, 1996 WL 278348.

7. *Barton, supra.*

travel agents have a duty to use reasonable care in making travel reservations and in confirming them prior to the date of the trip, as well as using "reasonable diligence in ascertaining the responsibility of any intervening 'wholesaler' or tour organizer."[8] A travel agent is not a guarantor of a perfect trip, but must use reasonable care in planning the trip and selecting any independent contractors.[9]

When assisting in planning a vacation, a travel agent has a duty to act with the care, skill, and diligence that a fiduciary rendering that kind of service would reasonably be expected to use.[10] The agent must make reasonable inquiries into the current financial stability of the person or entity with whom she recommended her principal do business.[11] The duty, then, is to discover and disclose material information that is reasonably obtainable.

This duty flows from the evolution of travel agents from mere ticket dispensers to fiduciaries and informed travel professionals.[12] Consumers rely on travel agents as information specialists, and, thus, professionalism and consumer reliance have created a special relationship between consumer and travel agents.[13] Travel agents have a duty to investigate destinations, suppliers, and tour operators and convey needed, material information to consumers.[14] If a tour operator or promoter defaults due to discoverable circumstances, the travel agent earning a commission from selling the tours should bear the loss if the agent fails to disclose the relevant risks.[15] The travel agent is in a better position to verify the reliability and integrity of tour operators and promoters.

The trial court found that Trinity was a "tour promoter" as defined under R.C. 1333.96(A)(2) and that O.K., a travel agent under R.C. 1333.96(A)(1), did not perform its duty to properly investigate Trinity before soliciting Grigsby's business. The issue of whether Trinity actually was a tour promoter or O.K. was a travel agent as statutorily defined was not appealed to this court; therefore, we accept the findings of the trial court.

---

8. *Id.*, 28 Ohio Misc.2d at 7, 28 OBR at 204–205, 502 N.E.2d at 717, quoting *Bucholtz v. Sirotkin Travel, Ltd.* (1973), 74 Misc.2d 180, 182, 343 N.Y.S.2d 438, 442.

9. *Barton,* 28 Ohio Misc.2d at 7, 28 OBR at 204–205, 502 N.E.2d at 717.

10. See *Douglas, supra.*

11. *Id.*

12. See *Pellegrini, supra.*

13. *Id.*

14. *Id.*

15. See *Rodriguez, supra.*

Under R.C. 1333.96(C), Trinity, as a tour promoter, was required to register with the Secretary of State before commencing business in this state.[16] A tour promoter must also provide a bond ($50,000 for interstate or international travel) in favor of the state before commencing operations.[17] Upon registration, a tour promoter shall use the statement "registered Ohio tour promoter" and its registration number in all advertisements in Ohio.[18] The advertisement for the Israel tour from Trinity was devoid of this statement and Trinity's registration number. Trinity could not have even provided a registration number because it was not registered in Ohio and never provided a bond, as statutorily required. O.K. breached its duty to Grigsby by failing to disclose to Grigsby that Trinity was not registered in Ohio and had no bond posted which could have provided security in case it defaulted. This information was reasonably obtainable, and in fact should have been clear to O.K. (at least O.K. was put on notice), because Trinity's advertisement did not have the statutorily required language and registration number. We overrule O.K.'s second assignment of error.

In its third assignment of error, O.K. claims that the trial court miscalculated damages. O.K. argues that Grigsby did not prove any damages greater than the cost of the tour. Grigsby paid $1,137 to O.K. for the tour of Israel. Because O.K. did not discover and disclose reasonably obtainable information that could have protected Grigsby from loss, it is liable for this amount. Additionally, the trial court awarded $175 for a round-trip airline ticket to New York that Grigsby bought in reliance on her planned tour of Israel. It was reasonably foreseeable that Grigsby would have to buy a ticket to New York to take her tour, because it originated in New York. O.K. is also liable for this $175, because its breach of duty was the proximate cause of Grigsby being stuck with a ticket to New York, which she could not use. The judgment of the trial court in favor of Grigsby for the amount of $1,312 is affirmed.

*Judgment affirmed.*

GORMAN, P.J., and SUNDERMANN, J., concur.

16. R.C. 1333.96(C) was amended, effective October 29, 1995, and now requires tour promoters to register with the Director of Commerce. Trinity registered neither with the Secretary of State nor with the Director of Commerce.

17. R.C. 1333.96(D).

18. R.C. 1333.96(F).