[Cite as *Ferrell v. Nationwide Mut. Ins. Co.*, 2011-Ohio-3385.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95649**

# BETTIE FERRELL, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# NATIONWIDE MUTUAL INS. CO., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-704212

**BEFORE:**   Jones, J., Blackmon, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   July 7, 2011

**ATTORNEY FOR APPELLANTS**

James M. Johnson
110 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEES**

Gregory E. O'Brien
Cavitch, Familo & Durkin Co., LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio 44114

LARRY A. JONES, J.:

{¶ 1}   Plaintiffs-appellants, Bettie Ferrell and Julius Thompson, appeal the trial court's grant of summary judgment in favor of defendants-appellees, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide Property and Casualty Insurance Company.   We affirm.

I.   Procedural History and Facts

{¶ 2}   The record before us demonstrates the following.   Ferrell was the owner of property located at 2934 East Boulevard in the city of Cleveland.   She was the sole named insured under an insurance policy issued by Nationwide Mutual Fire Insurance Company

("Nationwide") relative to the property. Ferrell did not live at the property; rather, she rented it to her brother, Thompson. Thompson primarily resided in Maryland and would stay at the property on his occasional visits to Cleveland, his hometown.

{¶ 3} Because Ferrell had health issues, Thompson agreed that he would "take care of the house." Pursuant to their oral agreement, Thompson paid Ferrell $500 a month and could "do whatever he wanted with the house," including subleasing it.

{¶ 4} In July or August 2006, Thompson, through an oral agreement, subleased the property to his and Ferrell's nephew, Fred Roberts. Beginning in early August, the gas service to the property, which had previously been registered in Thompson's name, was transferred to Roberts's name. Thompson and Roberts agreed that Roberts was to pay $675 monthly rent.

{¶ 5} Roberts was not paying his rent, however, and he and Thompson had a disagreement, which led to Thompson and Roberts having a document notarized on January 4, 2007. In the document, they agreed that Roberts owed Thompson some $3,500, Roberts was to vacate the property by January 17, 2007, and that after that date, Thompson had the right to remove any of Roberts's remaining belongings. Thompson prepared the document, and he and Roberts both signed it. Thompson was in Cleveland for the notarization of the document, but left town after that.

{¶ 6} Roberts made a request on January 18 that gas service for the property be

discontinued; the gas was turned off on January 26.

{¶ 7} On January 18, Thompson called Roberts's cell phone but Roberts did not answer. Thompson was not able to leave a message because the voicemail box was full and could not accept any more messages. Unable to reach Roberts, Thompson asked his brother to check on the house. On January 25, the day before the gas service was disconnected, the brother called Thompson from inside the house and told him that, although Roberts was not present at the time of his visit, the utilities were still on and it appeared that Roberts still lived there.

{¶ 8} On February 20, Thompson came to Cleveland, went to the house, and discovered that the steam radiator and plumbing systems had frozen, resulting in burst pipes and damage to the property.

{¶ 9} Ferrell made a claim with Nationwide, and the company initiated an investigation, during the course of which it interviewed Ferrell, Thompson, and Roberts. In a letter dated March 1, 2007, Nationwide informed Ferrell that it was denying her claim.

{¶ 10} In September 2009, Ferrell and Thompson filed this action against Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, and Fred Roberts.[1] Counts 1 and 2 asserted a

---

[1]This was the second filing. The first action, Case No. CV-651032, filed in February 2008,

cause of action against the Nationwide companies for breach of contract and breach of duty to act in good faith,[2] respectively. Count 3 asserted a cause of action against Roberts for negligence and breach of lease agreement. The plaintiffs never obtained service on Roberts.

{¶ 11} The Nationwide companies filed an answer, counterclaim, and cross-claim. In its counterclaim, the Nationwide companies sought a declaratory judgment with respect to the insurance policy at issue and indemnification or contribution against Thompson. In its cross-claim, the Nationwide companies sought indemnification or contribution against Roberts.

{¶ 12} The Nationwide companies filed a motion for summary judgment, which plaintiffs opposed. In an August 4, 2010 judgment entry, the trial court granted the Nationwide companies' motion for summary judgment on the plaintiffs' complaint and the Nationwide companies' counterclaim for declaratory judgment. The court found that there was "no just cause for delay."

{¶ 13} Thompson and Ferrell assign the following assignment of error for our review:

"The trial court erred in granting the motion for summary judgment of defendants/appellees, Nationwide Mutual Fire Insurance Company, Nationwide Mutual Insurance Company and Nationwide Property & Casualty Insurance Company."

II. Law and Analysis

{¶ 14} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison*

---

was dismissed without prejudice by the plaintiffs in May 2009.

[2]The bad faith claim was bifurcated from, and stayed pending resolution of, the other claims.

*Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369–370, 1998-Ohio-389, 696 N.E.2d 201, as follows:

> "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

{¶ 15} The relevant portion of the insurance policy provided as follows:

"**12.**  \*  \*  \* **d.** [Accidental discharge or overflow of water or steam] peril does not include loss \* \* \* caused by or resulting from freezing except as provided in the peril of freezing below[.]"

"\* \* \*

"**14. Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

"This peril does not include loss on the Described Location while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

"**a.** maintain heat in the building; or

"**b.** shut off the water supply and drain the system and appliances of water." (Emphasis sic.)

{¶ 16} The Nationwide companies' summary judgment motion was based on three grounds. First, the companies contended that summary judgment in favor of Nationwide

Mutual Insurance Company and Nationwide Property and Casualty Insurance Company was proper because those defendants never contracted with Ferrell. In support of its contention the companies submitted the affidavit of a representative of Nationwide Mutual Fire Insurance Company who averred that it was the company that issued the policy to Ferrell. Further, Nationwide also submitted answers to plaintiffs' interrogatories, wherein it responded that:

> "Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company have no relationship of any kind to the Plaintiffs or to the loss that is in issue. They are not proper parties to this suit and the complaint states no claim against them."

{¶ 17} Ferrell and Thompson did not contest Nationwide's claim. Therefore, summary judgment was properly granted in favor of Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company. The second ground upon which Nationwide sought summary judgment was related to Thompson. Specifically, the company contended that Thompson lacked standing to sue the company because he was not a named insured under the policy and no provision in the policy extended coverage to him. Ferrell and Thompson did not contest the company's claim in their opposition to the summary judgment motion, and upon review of the policy, we agree with Nationwide. Accordingly, summary judgment in favor of Nationwide and against Thompson was proper.

{¶ 18} The final ground upon which Nationwide based its summary judgment motion was on the theory of agency-principal. Specifically, the company contended that Thompson was Ferrell's agent, and his actions were imputed to Ferrell for the purpose of determining

whether she was entitled to coverage. According to the company, "Thompson did almost nothing to protect the home from damages that anyone could have seen coming under [the] circumstances."

{¶ 19} In opposition to Nationwide's contention, Ferrell and Thompson contended that the relationship between them was a "classic" landlord-tenant one, and Thompson, as a tenant, could not bind Ferrell. According to the plaintiffs, "Nationwide has tried to morph their relationship into that of Julius Thompson being a hired property manager. This is not supported by any of the evidence adduced in this case."

{¶ 20} Ferrell and Thompson contend that the trial court granted summary judgment to Nationwide based on an unsupported contention in the complaint. Specifically, in their complaint, the plaintiffs alleged that Thompson was the "property manager." In its judgment entry, the trial court found that, based on their complaint, the plaintiffs admitted that Thompson was Ferrell's agent.

{¶ 21} We agree with Ferrell and Thompson that an allegation in a complaint is not an admission; rather, it is a contention that will be proved or disproved. But the allegation in the complaint was not the sole ground on which the trial court found that Thompson was Ferrell's agent. Rather, the trial court also based its finding on the persuasiveness of Nationwide's "argument that plaintiff Julius Thompson was an agent of plaintiff Bettie Ferrell."

{¶ 22} In support of its summary judgment motion, Nationwide submitted the

deposition testimonies of Ferrell and Thompson. Ferrell testified that she did not have anything to do with the property; rather, she rented it to Thompson "to do whatever he wanted," and her only involvement was collecting the $500 monthly rent from him. She testified that because of health issues, she was not able to be involved with the particulars of maintaining the property.

{¶ 23} Thompson testified that he assumed responsibility for the maintenance of the property for two reasons: one, to help his sister, and two, so that he would have a place to stay when he came to town. He described himself as the "property manager," and testified about various projects that he had completed in the house, in the hope that he would one day purchase it.

{¶ 24} Although Thompson testified at deposition that he did not take further action in regard to the property after January 25 because his brother told him that Roberts was still on the property, he abandoned that argument and did not make it in opposition to Nationwide's summary judgment motion, or now on appeal. Rather, Thompson contended that he was not Ferrell's agent.

{¶ 25} A landlord is not automatically the principal of her tenant. *Trenka v. Cipriani Invest. Co.* (Oct. 6, 1983), Cuyahoga App. No. 45987. An agency relationship can be created when a property owner hires a manager. See White, Ohio Landlord Tenant Law (2010-2011 Ed.) 34, Section 2:23. Thus, in order to rely on a principal-agency theory in the context of a

landlord-tenant relationship, it must be demonstrated that an agency relationship existed.

{¶ 26} "'Under Ohio law an agency relationship is a consensual relationship (between two persons) where the agent has the power to bind the principal, and the principal has the right to control the agent. The existence of an agency relationship depends primarily upon the right of the principal to control the agent.'" *Remy v. Graszl* (Dec. 23, 1998), Richland App. No. 98 CA 64, quoting *Arnson v. Gen. Motors Corp.* (N.D.Ohio 1974), 377 F.Supp. 209. The agreement to create an agency relationship may be express or implied. *Trimble-Weber v. Weber* (1997), 119 Ohio App.3d 402, 407, 695 N.E.2d 344, citing *Johnson v. Tanksy Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 167, 642 N.E.2d 9. The party alleging the existence of an agency relationship bears the burden of proving that such a relationship exists. *Gardner Plumbing, Inc. v. Cottrill* (1975), 44 Ohio St.2d 111, 115, 338 N.E.2d 757; *Remy* citing *Grigsby v. O.K. Travel* (1997), 118 Ohio App.3d 671, 675, 693 N.E.2d 1142.

{¶ 27} In *Ross v. Burgan* (1955), 163 Ohio St. 211, 126 N.E.2d 592, the Ohio Supreme Court held that, "the test as to whether a person is the agent of another is the *right of control* of the one over the other." Id. at 219. Further, "the existence of the agency relationship 'depends upon the right of control, and not upon actual exercise of control at the moment.'" *Tittle v. Maurer* (Oct. 23, 1995), Shelby App. No. 17-95-5, citing 3 Ohio Jurisprudence 3d (1978) 15-16, Agency, Section 1. "Thus, agency does not rely upon whether the principal actually directs or takes control over the actions of the agent, but, rather, whether the principal

retains the right to control the situation." *Tittle* at fn. 3.

{¶ 28} Ferrell owned the property. As the owner, she retained the right to control the property. But at the time of the incident giving rise to this case, she had relinquished her control to Thompson. Specifically, Ferrell testified that because of health issues she did not have anything to do with the property; rather, she relied on Thompson to take control of it and he was free to do as he pleased. Thompson accepted that control and testified that he was the "property manager."

{¶ 29} Thus, in light of the above, the trial court's finding that Thompson was Ferrell's agent was proper, and no genuine issue of material fact remained on that issue. Having determined that Ferrell and Thompson had an agency relationship, we now consider whether the trial court's finding that both Thompson and Ferrell failed to use reasonable care in regard to the property was proper.

{¶ 30} In regard to Ferrell, she testified that she did not do anything in regard to the maintenance of the property. She was not aware of the specifics of the arrangement between Thompson and Roberts and, in fact, was not even aware that Thompson had asked Roberts to vacate the property. Thus, the trial court's finding that Ferrell did not act with reasonable care was proper.

{¶ 31} In regard to Thompson, he testified at his deposition that after he spoke with his brother on January 25, he did not take further action in regard to the property because he

believed that Roberts had not vacated the property and the utilities were still on. On the facts and circumstances of this case, we find that assumption was unreasonable.

{¶ 32} Specifically, the record demonstrates that Thompson was upset with Roberts because in the approximate six months Roberts lived in the house he had only paid Thompson $200. Because Roberts failed to pay rent, Thompson prepared, and on January 4, 2007, had a document notarized, wherein it was set forth that Roberts owed him some $3,500 and directed Roberts to leave the house by January 17, after which Thompson could remove his property. Roberts signed the document.

{¶ 33} The house was never empty; Thompson left some of his personal belongings at the house. Thompson testified at deposition that he let Roberts use the "stuff" that he left in the house, which he left for his (Thompson's) use when he came into town. Thus, Thompson's reliance on his brother's observation that it appeared that Roberts did not move out was unreasonable, in light of the acrimony that existed between him and Roberts and the document Roberts signed directing him to vacate the premises by January 17. Further, by Thompson's own admission, he did not do anything to confirm his brother's belief that Roberts was still residing at the property, and waited almost a month before checking on the property.

{¶ 34} In light of the above, the trial court did not err in granting summary judgment in favor of the Nationwide companies and against Ferrell and Thompson. The sole assignment

of error is therefore overruled.

Judgment affirmed.

It is ordered that appellees recover of appellants their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, JUDGE

PATRICIA A. BLACKMON, P.J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY