[Cite as *Zucco Painting & Wallcovering, Inc. v. DeLorean*, 2011-Ohio-3743.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

ZUCCO PAINTING &
WALLCOVERING, INC.

    Appellee

    v.

CHARLES DELOREAN

    Appellant

C.A. No.     10CA0053-M


APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    08 CVF 00487

DECISION AND JOURNAL ENTRY

Dated: August 1, 2011

---

MOORE, Judge.

{¶1} Charles DeLorean has appealed from a judgment of the Medina Municipal Court that granted damages to Zucco Painting & Wallcovering, Inc. on its breach of contract claim. For the reasons set forth below, we affirm.

I.

{¶2} Mr. DeLorean, a resident of Medina, Ohio, was involved in a home remodeling project. He hired David Ratliff as a contractor. Mr. Ratliff introduced Mr. DeLorean to one of the owners of Zucco Painting & Wallcovering, Inc. Mr. DeLorean hired Zucco to do some interior work. Zucco completed the work satisfactorily, and Mr. DeLorean paid the resulting $1,675 invoice without complaint. The agreed rate for Zucco's work had been $43 per hour. Shortly before payment on the first invoice, Mr. Ratliff requested that Zucco paint additional interior areas and a significant part of the exterior of the home. As time went on, Mr. Ratliff

continued increasing Zucco's assignments. Due to the volume of work, Zucco agreed to accept $41 per hour.

**{¶3}** Zucco and his crew performed the requested work and submitted to Mr. DeLorean an invoice for $11,333. Mr. DeLorean objected to the amount and offered to pay Zucco $5,000 to $6,000. Zucco rejected the compromise and filed suit in the Medina Municipal Court. Mr. DeLorean filed a counterclaim.

**{¶4}** The matter was tried to a magistrate who, on September 30, 2009, filed a magistrate's decision in favor of Zucco and against Mr. DeLorean for the invoice total of $11,333. The magistrate also found against Mr. DeLorean on his counterclaim. The trial judge signed the entry, and it was time stamped by the clerk of courts on September 30, 2009. On October 14, 2009, Mr. DeLorean filed objections to the magistrate's decision. Zucco responded. On January 1, 2010, after a transcript of the trial was filed and with leave of court, Mr. DeLorean filed supplemental objections. Zucco responded. On April 13, 2010, the trial court issued a second order reiterating aspects of its earlier judgment that dismissed the counterclaim and counts one and two of the complaint and entered judgment for Zucco on the breach of contract claim in the amount of $11,333. Mr. DeLorean appealed.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED WHEN IT HELD THAT THE GENERAL CONTRACTOR IN CHARGE OF THE REMODELING PROJECT AT [MR. DELOREAN'S] HOME WAS AN AGENT WITH AUTHORITY TO BIND MR. DELOREAN TO A CONTRACT."

**{¶5}** In his first assignment of error, Mr. DeLorean contends that the trial court erred when it found that the general contractor in charge of the home-remodeling project was an agent

with authority to bind him to a contract. Essentially, he contends that the trial court's judgment is against the manifest weight of the evidence. We disagree.

{¶6} On appeal, Mr. DeLorean asserts that the appropriate standard of review is the civil-manifest-weight-of-the-evidence standard as set forth in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, and reiterated by *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202. Under the civil standard, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.*, 54 Ohio St.2d at the syllabus; *Wilson* at ¶24. Moreover, appellate courts applying the civil-manifest-weight-of-the-evidence standard should presume that the trial court's factual findings are correct because it had the opportunity "'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Wilson* at ¶24, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80. It has been observed that this standard tends to merge the concepts of sufficiency and weight of the evidence and is highly deferential to the finder of fact. Id. at ¶26.

{¶7} In this case, the magistrate found, citing *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, that Mr. DeLorean was liable to Zucco because Mr. Ratliff had the authority to expand the scope of Zucco's work. "A principal and agency relationship exists when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks. But the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." (Internal citations and quotations omitted.) *Grigsby v. O.K. Travel* (1997),

118 Ohio App.3d 671, 675. On the other hand, to demonstrate apparent agency, Zucco was required to affirmatively show: "(1) that [Mr. DeLorean] held [Mr. Ratliff] out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that [Zucco] knew of the facts and acting in good faith had reason to believe and did believe that [Mr. Ratliff] possessed the necessary authority." (Citations and quotations omitted.) *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 576. In determining the apparent authority of an agent, courts must look to the acts of the principal because the principal is liable only if his acts or conduct have "clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority." (Citations and internal quotations omitted.) Id. at 576-77. Additionally, "'apparent authority is based on the objective theory of contracts, and arises when a person manifests to another that an agent or third person is authorized to act for him, irrespective of whether the person really intended to be bound, of whether the person told the same thing to the agent, and of whether the other person changed his position.'" (Emphasis omitted.) Id. at fn.5, quoting 1 Ohio Jury Instructions (1990) 200, Section 15.10. Moreover, even if some aspect of an agent's action was unauthorized, the action may be ratified by implication through the acceptance of the benefits of that action. *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 459. After reviewing the record, whether express, apparent, or via ratification, an agency relationship existed between Mr. DeLorean and Mr. Ratliff.

{¶8} In its case-in-chief, Zucco called Mr. DeLorean and Mr. Ratliff on cross-examination. Mr. DeLorean admitted that Mr. Ratliff hired Zucco on his behalf and that he approved of the decisions Mr. Ratliff made. Mr. Ratliff testified that he had one of Zucco's owners come out to the property to meet with him and Mr. DeLorean. After the three of them

spoke about the job, Mr. Ratliff, acting with Mr. DeLorean's permission, hired Zucco to paint and texture the pool room on a time and materials basis of $43 per hour. After Zucco completed the first phase of its work it submitted a bill directly to Mr. DeLorean for $1,675. Mr. DeLorean promptly paid. Mr. Ratliff admitted that, before Zucco finished the pool room wall, it was retained to paint the wine room and additional interior areas. Mr. Ratliff later added significant work on the exterior of the house. Testimony also indicated that Mr. DeLorean was aware that Zucco reduced its rate to $41 per hour because of the significant volume of additional work. Mr. DeLorean testified that he understood the nature and extent of the exterior work that Zucco was to complete. He further testified that he, Mr. Ratliff, and Zucco discussed the exterior work together in his dinette. He later testified, however, that Mr. Ratliff alone hired Zucco to complete this work on his behalf. Mr. DeLorean also said that Mr. Ratliff approved of Zucco completing the interior work, although Mr. DeLorean was unsure of the extent of the work. He acknowledged that Mr. Ratliff determined the scope of the work to be completed on his behalf. Mr. DeLorean testified that one of Zucco's owners handed him the final bill for its work, totaling $11,333. Mr. DeLorean testified that he was shocked by the amount. Zucco's co-owner testified that there was some disconnect between Mr. Ratliff and Mr. DeLorean at that time because, on a day that Mr. DeLorean refused to discuss the invoice with the co-owner, Mr. Ratliff attempted to add additional work for Zucco. The co-owner testified that, "The day I went over for the original payment that [Mr. DeLorean] wouldn't see me, [Mr. Ratliff] was asking me, can you pickle the wood in the living room?" The co-owner and Mr. DeLorean later met to discuss the bill. Mr. Ratliff sought to participate in the meeting but Zucco "felt like, you know, this agreement really is between me and Mr. DeLorean," and so he insisted on meeting with Mr. DeLorean alone. Mr. DeLorean offered to pay Zucco $5,000 to $6,000 for the work; the co-owner declined the offer.

The co-owner further testified that Mr. DeLorean was present nearly every day and, during the interior work, Mr. DeLorean's daughter Jody DeLorean was frequently involved with evaluating and planning the interior work, as well.

{¶9} The testimony demonstrates that the trial court's determination that agency existed was supported by some competent, credible evidence and, therefore, was not against the manifest weight of the evidence. *Wilson*, at ¶24. At the outset, the three men met together to discuss the initial work to be performed. After that discussion, it was Mr. Ratliff, not Mr. DeLorean who hired Zucco. Mr. DeLorean ratified Mr. Ratliff's conduct when he accepted Zucco's initial work and paid Zucco's bill, which was presented only to Mr. DeLorean. At the time of the payment, Zucco had already begun completing additional interior work as assigned by Mr. Ratliff. Mr. DeLorean also admitted that he knew Mr. Ratliff had hired Zucco to do additional interior work, although he was unaware of the extent of this work. Zucco's co-owner saw Mr. DeLorean nearly every day while working on the project and Mr. DeLorean's daughter was frequently involved with the interior work. Mr. DeLorean never questioned Zucco's presence or work in the additional interior areas, which lends support to the appearance that Mr. Ratliff was authorized to expand the scope of Zucco's work. *Master Consol. Corp*, 61 Ohio St.3d at 576.

{¶10} There was also competent, credible evidence to support the conclusion that Zucco's co-owner was reasonable in interpreting the relationship between Mr. DeLorean and Mr. Ratliff as principal and agent and that he acted in good faith on that appearance. Id. Mr. Ratliff continued to assign work of an ever-expanding scope and Zucco continued to satisfactorily complete that work, all while Mr. DeLorean was frequently present at the home. No complaint was made until some time after Zucco presented its final bill of $11,333 to Mr. DeLorean. Mr.

DeLorean attempted to settle the bill for $5,000 to $6,000 and eventually complained, for the first time, about the quality of Zucco's work.

{¶11} The trial court adopted the magistrate's decision, which found an agency relationship existed between Mr. DeLorean and Mr. Ratliff. Based on the above-recounted testimony, this finding is supported by some competent, credible evidence and is, therefore, not against the manifest weight of the evidence. *Wilson* at ¶24.

{¶12} Accordingly, we overrule Mr. DeLorean's first assignment of error.

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED WHEN IT HELD THAT THERE WAS A CONTRACT BETWEEN [] ZUCCO PAINTING & WALLCOVERING, INC. AND [MR.] DELOREAN."

{¶13} In his second assignment of error, Mr. DeLorean contends that the trial court erred when it found that there was a contract between Zucco and Mr. DeLorean. We disagree.

{¶14} Initially, Mr. DeLorean contends that a subcontractor cannot pursue an unjust enrichment claim against a property owner if he could potentially recover from both the general contractor and the homeowner, citing *BFI Waste Sys. of Ohio, Inc. v. Professional Constr. & Safety Servs., Inc.*, 9th Dist. No. 06CA008972, 2008-Ohio-1450, at ¶7. We observe, however, that the trial court dismissed Zucco's unjust enrichment claim and found in its favor only on its breach of contract claim. Accordingly, this contention is irrelevant to this appeal.

{¶15} A second significant contention in this assignment of error is that there was no contract between Zucco and Mr. DeLorean because Mr. Ratliff was serving as a general contractor rather than as an agent and that he created a contract only between himself as general contractor and Zucco as a subcontractor. To the extent that this assignment of error relies upon

that argument, it is moot because of our disposition of Mr. DeLorean's first assignment of error. App.R. 12(A)(1)(c).

{¶16} The remainder of Mr. DeLorean's argument with respect to the absence of a contract relies on the contention that the parties did not have an agreement as to price, particularly with respect to the exterior of the home. This assignment of error contends that the trial court's determination that a contract existed was against the manifest weight of the evidence. Therefore, we review the trial court's determination for support by some competent, credible evidence that goes to each element. *Wilson* at ¶24. To prevail on a contract action, a plaintiff must prove all of the essential elements of a contract, including an offer, acceptance, manifestation of mutual assent, and consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶16. The plaintiff must further prove "[a] meeting of the minds as to the essential terms of the contract[.]" Id. citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369.

{¶17} Having established in our disposition of the first assignment of error that the trial court did not err in finding an agency relationship between Mr. DeLorean and Mr. Ratliff, this Court need only address the interactions between Mr. Ratliff and Zucco. After Zucco completed the pool room, Mr. Ratliff expanded the scope of its work to include additional interior areas of the home, including the wine room, as well as significant exterior work. Because of the additional work, Zucco agreed to reduce its previous rate of $43 per hour to $41 per hour. The final invoice reflects that all additional work was billed at the reduced rate.

{¶18} There was conflicting testimony as to whether Mr. Ratliff showed Zucco's co-owner two quotes for the exterior, the highest of which was $2,900, prepared by other painters. The co-owner claims he was never shown quotes from other prospective painters. Mr. Ratliff

acknowledged that the co-owner never agreed to a specific lump sum but testified that the co-owner felt that he could be competitive with the $2,900 quote. At trial, Mr. Ratliff complained that Zucco's co-owner made an effort to work slowly. The co-owner testified, however, that no one ever complained about his speed or the quality of his workmanship while he was on the job. Mr. DeLorean now suggests that the $11,333 invoice is unconscionable in light of the $2,900 quote the co-owner was shown. The co-owner, however, testified regarding his hours and that he completed all work reflected on the invoice. Also, Zucco completed significant work that was not reflected in the quote from another contractor, including interior work. Mr. Ratliff acknowledged that he agreed that Zucco would be paid $41 per hour for the additional work and that some of the exterior work Zucco completed was not included in the $2,900 quote. Although Mr. Ratliff and Mr. DeLorean hoped the exterior project could be completed for $2,900, that hope was not part of a contract. There is some competent, credible evidence demonstrating a series of offers and acceptances between Mr. Ratliff and Zucco repeatedly expanding the scope of the project, manifestations of mutual assent, and consideration. *Kostelnik* at ¶16. Although it is clear that the testimony was contradictory and Mr. Ratliff expected a lower overall total, as noted above, the trial court predominantly believed Zucco's co-owner and the civil-manifest-weight-of-the-evidence standard is highly deferential to the finder of fact. *Wilson* at ¶26. There was some competent, credible evidence that Zucco was entitled to $11,333 including the cost of materials. Id. at ¶24. The contradictory testimony at trial does not, therefore, demonstrate that the trial court's judgment was against the manifest weight of the evidence because the magistrate was in the best position to evaluate the witnesses' testimony. Id. at ¶24, citing *Seasons Coal*, 10 Ohio St.3d at 80.

{¶19} Accordingly, we overrule Mr. DeLorean's second assignment of error.

III.

{¶20} In light of the foregoing, we affirm the judgment of the Medina County Municipal Court.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

DICKINSON, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

MARY C. CHANDLER, Attorney at Law, for Appellant.

THOMAS R. HOULIHAN, and JACK W. MORRISON, JR., Attorneys at Law, for Appellee.