[Cite as *Nee v. State Industries, Inc.*, 2013-Ohio-4794.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 99505

---

# MATTHEW M. NEE

#### PLAINTIFF-APPELLANT

vs.

# STATE INDUSTRIES, INC.

#### DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED IN PART; REVERSED IN PART;
## REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-713298

**BEFORE:** Rocco, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 31, 2013

**ATTORNEYS FOR APPELLANT**

Stuart E. Scott
Nicholas A. Dicello
William B. Eadie
Spangenberg, Shibley & Liber L.L.P.
1001 Lakeside Avenue, East
Suite 1700
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Thomas J. Lee
Amelia J. Workman Farago
Julie A. Crocker
David H. Wallace
Taft Stettinius & Hollister L.L.P.
200 Public Square, Suite 3500
Cleveland, Ohio 44114

KENNETH A. ROCCO, P.J.:

{¶1} In this breach of warranty action, plaintiff-appellant Matthew Nee appeals from the decision of the Cuyahoga County Court of Common Pleas (1) granting summary judgment in favor of defendant-appellee State Industries, Inc. ("State Industries") on his claims for breach of express warranty under R.C. 1302.26, breach of contract, equitable restitution, and violation of the Ohio Consumer Sales Practices Act ("CSPA") and (2) denying Nee's motion for partial summary judgment on breach of contract and agency issues, arising out of State Industries' alleged failure to provide Nee with a free, replacement water heater under the terms of its warranty after his water heater leaked. Nee's claims center around a $80.81 charge Nee was required to pay when he made a warranty claim on the leaking water heater, in exchange for which Nee received a new water heater, with a new safety feature, and a new warranty.

{¶2} Based on our review of the record, we find that genuine issues of material fact exist as to the viability of Nee's claims. Accordingly, we reverse the trial court's entry of summary judgment in favor of State Industries and affirm the trial court's denial of Nee's motion for partial summary judgment.

**Factual and Procedural Background**

{¶3} In April 2003, Nee and his wife entered into a agreement with Carol Dunipace to purchase her home in Lakewood, Ohio. Shortly thereafter, Dunipace noticed that the home's water heater was leaking and sought a replacement water heater under a seller's home warranty she had purchased from HMS when she listed the home

for sale.  On May 9, 2003, A-1 Affordable Plumbing installed a new 40-gallon gas water heater manufactured by State Industries in the home (the "2003 water heater"), pursuant to the HMS home warranty.  The water heater came with a six-year limited express warranty from State Industries (the "water heater warranty") which provided, in relevant part:

> 6 YEAR LIMITED WARRANTY ON TANK
> The "Company" warrants the tank in this water heater in case of a leak within six (6) years from the date of purchase or, in the absence of a Bill of Sale verifying said date, from the date indicated on the model rating plate affixed to this water heater; provided, however, that use of this water heater for commercial, institutional, industrial, or other non-residential purposes, shall limit the maximum duration of this tank warranty to one (1) year from date of purchase.  Should a leak occur in the tank, the Company will furnish a new current model water tank of equal capacity and quality.  No labor, installation, or freight (if any) charges are included in this warranty. You must pay these costs.
>
> * * *
>
> 4.      These warranties shall be void and shall have no effect: * * *
>
>  i.      If the model rating plate has been defaced or discarded and you do not have a Bill of Sale to verify the purchase date. * * *
>
> 5.      Replacements and/or repairs furnished under these warranties do not carry a new warranty, only the unexpired portion of the original warranty.
>
> 6.      The terms of this warranty may not be varied by any person, whether or not purporting to represent or to act on behalf of the Company.
>
> 7.      In order to obtain service under these warranties you must promptly notify the installing contractor or dealer, giving the nature of the problem and the model and serial number of the water heater.  If for any reason the installer or dealer cannot be located or fails to provide satisfactory warranty service, you should write the Company with the above information.

Based on the date indicated on the model rating plate, the water heater was manufactured on February 7, 2003.

{¶4} The sale of the home closed, and Nee and his wife became owners of the home (including the 2003 water heater) in early June 2003. Included in the documentation Nee and his wife received with their purchase of the home was the water heater warranty and a "job work order" from A-1 Affordable Plumbing, dated May 9, 2003 (the "job work order"). Under "description of work," the job work order states, "[i]nstalled 40 gallon gas water heater [t]all." The work order further reflects the receipt of a check payment in the amount of $100 and is signed by Dunipace in "acknowledg[ment]" of "the satisfactory completion of the above described work."[1]

{¶5} In early March 2009, Nee noticed that the tank on the 2003 water heater was leaking and contacted State Industries to determine what needed to be done to replace the water heater under the warranty. State Industries' call log reflects that when Nee called State Industries on March 2, 2009, one of its residential call center representatives informed Nee that, based on the serial number Nee provided, the warranty on the 2003 water heater had expired and suggested that Nee provide "proof of purchase" to extend

---

[1]Nee refers to this $100 payment as an "installation charge." However, there is nothing in the record that identifies this payment as an installation charge. The documents relating to the HMS home warranty under which the water heater was replaced indicate that Dunipace had a $100 deductible under the home warranty. Accordingly, the $100 payment may simply represent Dunipace's payment of her deductible, i.e., Dunipace's share of the cost of the water heater and its installation, under the home warranty.

the warranty date. Nee testified that the State Industries representative told him to contact Edelman Plumbing Supply ("Edelman"), State Industries' closest authorized distributor, to submit his warranty claim. Nee did not recall being told by State Industries that his water heater was out of warranty unless he could provide "proof of purchase."

{¶6} Nee testified that when he went to Edelman he "presented whatever paperwork they required," including the "sticker off the water heater," i.e., the model rating plate, which contained the water heater's serial number and date of manufacture. It is not clear from the record what other "paperwork" Nee submitted to Edelman in support of his warranty claim.

{¶7} Amy Hopkins, consumer relations manager for A.O. Smith Water Products, which handles customer service and warranty issues for State Industries, testified that State Industries and its distributors use a computerized warranty system, Warranty Wizard, to submit and process water heater warranty claims. The distributor enters the serial number from the water heater's model data rating plate into the Warranty Wizard program, and the program displays various information, including the model, date of manufacture, and existing warranty based on the serial number. If the water heater's installation date is available, that information may be entered into the Warranty Wizard program as well. Hopkins testified that although a water heater may be out of warranty based on its manufacture date, it could still be within warranty if the customer has proof of the date of installation. As Hopkins explained, "[i]f they do not have the date of

installation, then we go by the date of manufacture" in verifying whether a water heater is within warranty. If the warranty is verified by the distributor, the distributor provides a replacement water heater to the customer and files a claim for a credit from State Industries. If the warranty claim is approved by State Industries, the distributor receives a credit for the replacement water heater provided to the customer.

{¶8} In this case, Edelman entered information it received from Nee into the Warranty Wizard program and submitted a warranty claim.[2] Hopkins testified that based on the information Edelman submitted, the 2003 water heater was under warranty, and that Edelman had submitted a valid warranty claim relating to the 2003 water heater.

{¶9} Nee testified that an Edelman representative told him that there would be an $80.81 charge for the replacement water heater. Nee testified that he questioned the charge for the replacement water heater and claims the Edelman representative told him that it was a charge State Industries had decided to pass along to consumers because of a "newly required safety device." Nee claims that he "protested" the charge because the warranty "didn't say anything" about it, but was told that it was a "required charge" and that unless he paid it, he would not receive a replacement water heater. Nee paid the $80.81 charge ($75.00 plus applicable sales tax) and brought the replacement water heater

---

[2]It is not entirely clear from the record what information Edelman submitted in connection with Nee's warranty claim. Edelman is not a party to the case, and there is no testimony from any Edelman representative in the record. Although the parties agree that the 2003 water heater was installed on May 9, 2003, Edelman apparently incorrectly entered the installation date in the Warranty Wizard program as March 9, 2003. This appears to have been a typographical error.

home. A friend who does plumbing work later removed the 2003 water heater and installed the replacement water heater for Nee.

{¶10} Several weeks after he received the replacement water heater, Nee called State Industries to complain about the $80.81 charge. Nee testified that the State Industries representative with whom he spoke told him that the charge was for a "new device that was required pursuant to federal regulation" and that State Industries "had implemented a corporate policy to pass that charge along to the consumers."

{¶11} Beginning in July 2003, in order to comply with new industry safety standards, all of State Industries' gas water heaters placed on the market were manufactured with flammable vapor ignition resistance ("FVIR") technology. This technology was designed to contain within the water heater any flammable vapors accidentally ignited when flammable liquids are misused in the vicinity of the water heater, in order to prevent the water heater from being an ignition source for flammable vapors outside the water heater.[3]

{¶12} Hopkins testified that in January 2005, State Industries began assessing a $60 charge (the "FVIR upcharge") to cover the cost of the FVIR technology whenever a water heater manufactured before the new safety standards became effective (a

---

[3]The FVIR design involved enclosing the water heater's combustion chamber (the area at the bottom of the water heater underneath the water tank where the gas burner is located), leaving only one opening for air in the bottom of the combustion chamber and placing a flame arrestor over that opening so that any air (including any flammable vapors) entering the combustion chamber would have to pass through the flame arrestor. If any flammable vapors ignited, the flames would be kept inside the water heater and would not flash out to ignite any vapors outside the water heater.

"non-FVIR water heater") was replaced with a water heater that was manufactured with the FVIR technology (an "FVIR water heater") under its water heater warranty. The FVIR upcharge was charged to the distributor in the form of a reduced credit, i.e., when replacing a non-FVIR water heater with an FVIR water heater under the warranty, the distributor received a credit from State Industries for the cost of the replacement water heater less the FVIR upcharge. Although its distributors were not required to do so, Hopkins testified that State Industries expected that a distributor would pass the upcharge along to its customer and so on down the distribution chain, so that the cost of the upcharge was ultimately borne by the consumer receiving the FVIR water heater as a replacement under the warranty. In exchange for the FVIR upcharge, the consumer was provided with a full six-year warranty on the replacement FVIR water heater, rather than the balance of the warranty remaining on the original non-FVIR water heater. Hopkins acknowledged that the FVIR upcharge was not a "labor, installation, or freight * * * charge" and thus was not one of the "costs" specifically referenced in the warranty that a consumer "must pay" in connection with a warranty replacement. Although in certain instances, State Industries refunded an FVIR upcharge when a customer complained, Hopkins testified that refunds were not provided "in every instance."

{¶13} In this case, State Industries credited Edelman the purchase price of the replacement FVIR water heater it provided to Nee, less the $60 FVIR upcharge. There is no information in the record as to why Edelman charged Nee an additional $15 (plus tax), i.e., $80.81 rather than $60, for the replacement FVIR water heater. Hopkins testified

that State Industries did not provide "strict instructions" to its distributors regarding how to collect the FVIR upcharge; it "left [that] up to the distributors." She further testified that although State Industries knew certain of its distributors were charging customers more for warranty replacements than the $60 FVIR upcharge State Industries assessed against the distributors, it did not normally investigate or intervene when a distributor did so — that was a matter between the distributor and the customer.

{¶14} On December 17, 2009, Nee filed a complaint asserting individual and class action claims[4] against State Industries for breach of express warranty under R.C. 1302.26, breach of contract, violation of the Ohio Consumer Sales Practices Act

---

[4]Nee's claims were brought on behalf of himself and a putative class consisting of

all Ohio residents who, within the last fifteen (15) years: (1) own or owned a residential gas water heater manufactured by State Industries that is or was covered by the Warranty or a similar Express Warranty promising that State Industries would furnish, free of charge, a replacement gas water heater in the event of a tank leak occurring within the Express Warranty period; (2) due to a tank leak failure, replaced the residential gas water heater that was covered by the State Industries' Warranty or a similar Express Warranty; and (3) were required to pay a charge for the replacement of the hot water heater other than the cost of labor, installation, or freight associated with the delivery and/or installation of the replacement gas water heater,

and a putative sub-class of class members consisting of

all Ohio residents who currently own residential gas water heaters manufactured by State Industries that are covered by the Warranty or a similar Express Warranty promising that State Industries will furnish, free of charge, a replacement gas water heater in the event of a tank leak occurring within the Express Warranty period, but who have not yet replaced the gas water heaters under the terms of the Express Warranty.

On May 27, 2011, the trial court granted State Industries' motion to stay class discovery pending its ruling on summary judgment on Nee's individual claims.

("CSPA"), and equitable restitution related to the FVIR upcharge. Nee alleged that he "became the owner" of the 2003 water heater in May 2003 and that prior to the expiration of the six-year warranty, the tank of the water heater began to leak, entitling him to a "free" replacement water heater under the warranty. Nee alleged that State Industries' actions in charging him a fee for the replacement water heater (that was not a cost of labor, installation, or freight associated with the delivery or installation of the replacement water heater) was improper and constituted a breach of contract, a breach of express warranty under R.C. 1302.26, and a violation of CSPA. Nee further alleged that it would be "unjust and unfair" for State Industries to retain payments made to obtain replacement water heaters that were not required by the terms of the warranty, justifying restitution of the improper charges.

**{¶15}** Nee's original complaint did not include a copy of the warranty or other documentation supporting his warranty claim. After State Industries filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6), or, in the alternative, for a more definite statement pursuant to Civ.R. 10(D) and 12(E), Nee filed an amended complaint, containing nearly identical allegations but attaching a copy of the warranty. On May 3, 2010, State Industries filed a second motion for a more definite statement pursuant to Civ.R. 10(D) and 12(E) or to dismiss the amended complaint pursuant to Civ.R. 12(B)(6), arguing that Nee had failed to plead sufficient facts in his complaint establishing that he had standing to enforce the warranty or that any warranty was breached.

{¶16} On March 9, 2011, the trial court granted State Industries' motion in part and ordered Nee to provide the date on the water heater's model rating plate or a copy of the bill of sale for the water heater reflecting its purchase date. In response, Nee filed a "notice of submission of bill of sale," attaching a statement that he had obtained in discovery from A-1 Affordable Plumbing. The statement reflected a transaction on May 9, 2003 relating to "HMS 131496111 P 225 L 175 TAX 15 *40 GAL W/H INSTALL" and two payments of $100 and $315 on May 9, 2003 and June 2, 2003, respectively. State Industries filed an answer, denying the material allegations of the complaint and asserting various affirmative defenses.

{¶17} On October 31, 2011, State Industries filed a motion for summary judgment on Nee's individual claims. In its motion, State Industries argued that, based on the undisputed facts, it was entitled to summary judgment on a number of grounds, including: (1) because the water heater failed more than six years after it was manufactured and Nee failed to present a bill of sale verifying the purchase date, State Industries had no obligation to honor the warranty; (2) even if State Industries was required to honor the warranty, it satisfied the warranty by providing Nee a replacement water heater; (3) Nee was not a "buyer" under the UCC, could not bring a claim for breach of express warranty under R.C. 1302.26, and failed to establish that State Industries breached any promise made to Dunipace related to the 2003 water heater; (4) because Nee did not himself purchase the water heater from State Industries, he was not a "consumer" and did not participate in any "consumer transaction" within the meaning of CSPA; and (5) Nee

received a substantial benefit in exchange for the $80.81 charge he paid when he received the replacement water heater.

**{¶18}** Nee opposed the motion and filed his own motion for partial summary judgment on two issues: (1) whether State Industries breached its warranty by charging Nee "a fee to replace his defective water heater" and (2) whether Edelman was State Industries' agent such that State Industries was "legally responsible" for Edelman's actions in purportedly charging customers excessive fees for warranty replacements.

**{¶19}** On January 3, 2013, the trial court granted State Industries' motion for summary judgment and denied Nee's motion for partial summary judgment. The trial court held that because Nee never produced a bill of sale for the water heater verifying its purchase date, he "failed to comply with the warranty claim requirements," and that, therefore, the date on the water heater's model rating plate controlled in determining the warranty period. Because, based on the date on the water heater's model rating plate, the water heater's six-year warranty had already expired when the water heater began leaking in March 2009, the trial court held that State Industries "was not obligated to honor the warranty." The trial court also "decline[d] to find" that Nee was a "buyer" for purposes of his express warranty claim under R.C. 1302.26 or that State Industries had engaged in any unfair or deceptive acts or practices in connection with a consumer transaction under CSPA.

{¶20} Nee appeals the trial court's entry of summary judgment in favor of State Industries and the trial court's denial of his motion for partial summary judgment, raising the following six assignments of error:

FIRST ASSIGNMENT OF ERROR

The trial court erred in finding that the 2003 water heater was no longer covered under the warranty as the basis for granting State's and denying Mr. Nee's motions for summary judgment.

SECOND ASSIGNMENT OF ERROR

The trial court erred in finding that plaintiff was not a "buyer" under the UCC as a basis to grant summary judgment on plaintiff's UCC warranty claim.

THIRD ASSIGNMENT OF ERROR

The trial court erred in holding that Mr. Nee did not have a valid CSPA claim despite Mr. Nee being the owner of the water heater when the claim arose under a freely transferrable warantee [sic].

FOURTH ASSIGNMENT OF ERROR

The trial court erred in dismissing Mr. Nee's CSPA claim based on finding that State did not engage in unfair and deceptive acts or practices in connection with a consumer transaction.

FIFTH ASSIGNMENT OF ERROR

The trial court erred in denying plaintiff's motion for partial summary judgment on contract breach.

SIXTH ASSIGNMENT OF ERROR

The trial court erred in denying plaintiff's motion for partial summary judgment on Edelman's agency.

{¶21} For the reasons that follow, we reverse the trial court's granting of State Industries' motion for summary judgment and affirm the trial court's denial of Nee's motion for partial summary judgment.

**Standard of Review**

{¶22} An appeal of a trial court's summary judgment ruling is subject to a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Id.*

{¶23} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue exists as to any material fact, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.

{¶24} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

**Coverage under the Water Heater Warranty**

**{¶25}** In his first assignment of error, Nee claims that the trial court erred in determining, as a matter of law, that the 2003 water heater was not covered by the warranty. Specifically, Nee contends that the trial court erred in determining that Nee "never produced a bill of sale for the water heater" and in concluding that the warranty, therefore, expired on February 7, 2009, six years from the manufacture date indicated on the water heater's model rating plate, rather than six years from the date of purchase. For the reasons that follow, we believe that genuine issues of material fact exist regarding whether the water heater was covered by the warranty at the time Nee submitted his warranty claim and that the trial court, therefore, erred in entering summary judgment on that basis.

**{¶26}** Under the express terms of the warranty, State Industries warranted the 2003 water heater for a period of "six (6) years from the date of purchase or, in the absence of a Bill of Sale verifying said date, from the date indicated on the model rating plate."

**{¶27}** To determine whether the water heater was covered by the warranty at the time Nee submitted his warranty claim, we must interpret the language of the warranty. When faced with an issue of contract interpretation, a court must give effect to the intent of the parties as reflected in the language of the contract. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37; *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 637, 597 N.E.2d 499 (1992). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco* at ¶ 37. If, on the other hand, a contract term is

ambiguous, a court may consider extrinsic evidence, including evidence of the parties' dealings and course of conduct, to ascertain the parties' intent. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 12, citing *Shifrin*, *supra*.

{¶28} The fact that a term is not defined within the contract does not, in and of itself, make the term ambiguous. *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 2004-Ohio-7102, 820 N.E.2d 910, ¶ 23, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). Where terms in a contract are not defined, they will be given their plain and ordinary meaning "'unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Petro* at ¶ 23, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *see also Skerlec v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 15, citing *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9. A contract term is ambiguous if it cannot be clearly determined from a reading of the entire agreement or if the term is susceptible of more than one reasonable interpretation. *Michael A. Gerard, Inc. v. Haffke,* 8th Dist. Cuyahoga No. 98488, 2013-Ohio-168, ¶ 11, citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 177, 556 N.E.2d 1186 (1990); *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.*, 8th Dist. Cuyahoga No. 98986, 2013-Ohio-1800, ¶ 15, quoting *Look v. H&M Custom Home Builders Co., Inc.*, 11th Dist.

Geauga No. 2011-G-3036, 2012-Ohio-3017, ¶ 18. These principles of contract interpretation apply with equal force when interpreting warranty provisions. *See, e.g., Leonard v. Brock*, 1st Dist. Hamilton No. C-060635, 2007-Ohio-4601, ¶ 8; *Walter v. Agoston*, 12th Dist. Warren No. CA2003-03-039, 2004-Ohio-2488, ¶ 12.

{¶29} It is undisputed that the water heater failed in March 2009, more than six years after the February 7, 2003 date indicated on the water heater's model rating plate. Accordingly, under the express terms of the warranty, Nee needed to produce "a Bill of Sale" "verifying" a date of "purchase" within the six-year term, i.e., after March 2, 2003, to be eligible for a replacement water heater based on the purchase date. Therefore, the issue in determining whether the water heater was covered by the warranty is whether Nee provided "a Bill of Sale" "verifying" the requisite "purchase" date within the meaning of the warranty.

{¶30} Nee contends that he produced two "bills of sale" in support of his warranty claim: (1) the A-1 Affordable Plumbing job work order and (2) the A-1 Affordable Plumbing statement. It is undisputed, however, that Nee did not obtain a copy of the statement until discovery in this action, long after he submitted his warranty claim. Accordingly, we need only consider whether the job work order constituted the requisite "Bill of Sale" under the warranty.

{¶31} As an initial matter, although the trial court determined, in ruling on the parties' motions for summary judgment, that Nee "produced the job work order," we believe that genuine issues of fact exist as to whether Nee submitted the job work order in

support of his warranty claim. Nee maintains that when he went to Edelman to process his warranty claim, he submitted "whatever [paperwork] was required, likely the Job Order." However, no evidence was submitted by the parties as to exactly what paperwork was submitted and whether that paperwork included the job work order. Based on our review of the record, the only documentation Nee possessed at that time related to the 2003 water heater was the model rating plate, the warranty, and the job work order. To process Nee's warranty claim, Edelman was required to submit the water heater's installation date. Of the model rating plate, warranty, and job work order, only the job work order contained that information. Accordingly, viewing the evidence in the light most favorable to Nee, it could be reasonably inferred that Nee provided a copy of the job work order to Edelman when he submitted his warranty claim. However, we do not believe that factual issue was properly resolved, as a matter of law, by the trial court.

{¶32} As to whether the job work order constituted "a Bill of Sale" "verifying" the "purchase" date within the meaning of the warranty, the trial court held that the warranty language was unambiguous and that because the job work order, "reflecting the day the tank was installed," was "silent as to the day the tank was purchased," it was not a "Bill of Sale" that "would have verified the date the heater had been purchased." The trial court, therefore, held, that under the terms of the warranty, the warranty expired on February 7, 2009, six years after the date on the model rating plate and that Nee's claims failed as a matter of law. We disagree.

{¶33} The terms "Bill of Sale," "purchase," and "verifying" are not defined in the warranty. *Webster's New World Dictionary* defines a "bill of sale" as "a written statement certifying that the ownership of something has been transferred by sale." *Webster's New World Dictionary* 138 (3d College Ed.1988). *Black's Law Dictionary* defines a "bill of sale" as: "In contracts, a written agreement, formerly limited to one under seal, by which one person assigns or transfers his right to or interest in goods and personal chattels to another. Legal document which conveys title from seller to buyer." *Black's Law Dictionary* 164 (6th Ed.1990). It defines "purchase," in relevant part, as: "Transmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration. To own by paying or by promising to pay an agreed price which is enforceable at law." (Citations omitted.) *Id.* at 1234. The term "verify" means "to prove to be true by demonstration, evidence, or testimony; confirm or substantiate." *Webster's New World Dictionary* at 1482.

{¶34} "Bill of Sale," as used in the warranty, is a capitalized term. Capitalization, when used in the middle of a sentence, is typically reserved for defined terms or proper nouns or titles. The warranty, however, does not refer to "*the*" Bill of Sale, but rather, "*a*" Bill of Sale, in each of the instances in which the term is used. Accordingly, it is unclear from the face of the warranty whether a consumer, in order to obtain coverage under the warranty based on the purchase date, must produce a document entitled "Bill of Sale" that "verif[ies]" the "purchase" date or whether any document that arguably meets the definition of, or functions as, a "bill of sale" (e.g., a receipt, invoice, statement, or

even a work order evidencing the transfer of ownership of the water heater) that "verif[ies]" the "purchase" date, would suffice.

{¶35} The trial court held that the job work order did not satisfy the warranty's requirements because it reflected only the date the water heater was installed and was "silent as to the day the tank was purchased." The warranty, however, does not require that a claimant produce a bill of sale expressly *stating* the *purchase date* in order for the warranty to extend six years from the purchase date. The warranty requires only "a Bill of Sale *verifying* [the purchase] date." (Emphasis added.)

{¶36} State Industries does not sell water heaters directly to consumers, and, therefore, does not provide "bills of sale" for water heaters directly to consumers. Instead, consumers purchase State Industries' water heaters through one of two channels: (1) State Industries' authorized distributors, who usually sell to service providers (i.e., plumbers) but occasionally make direct sales to consumers, and (2) service providers who purchase water heaters from distributors and sell them to consumers, often installing the water heater as part of the transaction.

{¶37} As it relates to household consumer goods, "bill of sale" is an obsolete term. Documents entitled "Bills of Sale" are no longer commonly prepared when household consumer goods are purchased. Indeed, we question (1) whether a document entitled "Bill of Sale" would ever be provided by a seller to a purchaser of a household consumer good today, given the extensive commercial distribution networks that are involved, and (2) if so, who would provide such a "Bill of Sale" and to whom. Would State Industries

provide a Bill of Sale to Edelman? Would Edelman then provide a Bill of Sale to the service provider? Would the service provider then provide a Bill of Sale to the consumer? There is no evidence in the record that State Industries provided documents entitled "Bills of Sale" to its distributors when selling them water heaters. Nor is there any evidence that anyone else in the distribution chain provided or received such a document in connection with the sale or purchase of the 2003 water heater.[5]

{¶38} In this case, the record reflects that Dunipace dealt exclusively with a service provider, i.e., A-1 Affordable Plumbing, with respect to the purchase and installation of the 2003 water heater. Once installed, the water heater became part of the home. Accordingly, transfer of ownership of the 2003 water heater to Dunipace, i.e., the water heater was "purchased" by Dunipace, when the water heater was installed on May 9, 2003.[6] The job work order evidenced that transaction.

---

[5]State Industries contends that neither the job work order nor the statement constitutes "a Bill of Sale" within the meaning of the warranty. State Industries, however, does not identify any document that a consumer would have received, where, as here, the consumer dealt exclusively with a service provider who sold the water heater to the consumer and installed the water heater as part of the same transaction, that it contends would have constituted "a Bill of Sale verifying [the purchase date]" within the meaning of the warranty. It is not reasonable to interpret the language of a warranty to impose a requirement for warranty coverage that, under the circumstances in which it most frequently applies, could not possibly be met. *See, e.g., Kebe v. Nutro Mach. Corp.*, 30 Ohio App.3d 175, 177, 507 N.E.2d 369 (8th Dist.1985) (When interpreting contract language, "the court should prefer a meaning which gives it vitality rather than a meaning which renders its performance illegal or impossible."); *Liqui Lawn Corp. v. Andersons*, 8th Dist. Cuyahoga No. 50240, 1986 Ohio App. LEXIS 6376, *8 (Apr. 10, 1986) ("[C]ourts disfavor contract interpretations which render contracts illusory or unenforceable.").

[6]Nee argues, based on the A-1 Affordable Plumbing statement, that the purchase date for the water heater was actually June 2, 2003. Although the A-1 Affordable Plumbing statement reflects that an additional $315 payment was made in connection with the transaction on June 2, 2003, that

**{¶39}** That documentation of the water heater's installation date could be used to "verify" its purchase date for purposes of a warranty claim, is further supported by evidence of State Industries' own practice of using the "installation date," rather than the "purchase date," to determine the validity of warranty claims in its warranty claims processing system. State Industries' corporate representative, Amy Hopkins, testified that a water heater that was out of warranty based on its manufacture date could still be within warranty if the customer had proof of the date of installation. Only if a customer did not have proof of the date of installation did State Industries use the date of manufacture in verifying whether a water heater was within warranty.

**{¶40}** Viewing the evidence in the light most favorable to Nee, the job work order arguably evidences the installation of the 2003 water heater in the home, the transfer of ownership of the water heater to Dunipace, and the date on which the installation and purchase of the water heater occurred — May 9, 2003. A genuine issue of material fact, therefore, exists as to whether the job work order constituted "a Bill of Sale" "verifying" a "purchase" date within the warranty period.

**{¶41}** Given that issues of fact exist as to whether Nee presented "a Bill of Sale," in support of his warranty claim, that "verif[ied]" a "purchase" date within the warranty period,[7] the trial court erred in determining as a matter of law that the water heater was

---

does not change the purchase date. Although the transaction may not have been fully paid for until June 2, 2003, that does not mean that the water heater was not "purchased" when it was installed.

[7]Even if the job work order did not constitute "a Bill of Sale verifying [the purchase date]" within the meaning of the warranty, we believe there is an issue of fact as to whether State Industries

not covered by the warranty and in entering summary judgment in favor of State Industries on that basis.   Nee's first assignment of error is sustained.

**Breach of Express Warranty under R.C. 1302.26**

{¶42} In his second assignment of error, Nee contends that the trial court erred in granting summary judgment in favor of State Industries on his breach of express warranty claim under R.C. 1302.26 on the grounds that he was not a "buyer" of the water heater as defined in R.C. 1302.01(A)(1).   We agree.

{¶43} The trial court held that because Nee did not himself "buy or contract to buy" the 2003 water heater, but "instead became the owner of the [water] heater after

---

waived the requirement that the purchase date be "verified" by "a Bill of Sale" in order for the warranty to run six years from the purchase date, rather than six years from the date indicated on the water heater's model rating plate.   "[W]aiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term."   *Kappa HQ & CC, Inc. v. Norman*, 8th Dist. Cuyahoga No. 97892, 2012-Ohio-4816, ¶ 18, citing *Vivi Retail Inc. v. E&A N.E. Ltd. Partnership*, 8th Dist. Cuyahoga No. 90527, 2008-Ohio-4705, ¶ 30; *see also Convenient Food Mart, Inc. v. Atwell*, 11th Dist. Lake No. 2003-L-174, 2005-Ohio-704, ¶ 23   ("by failing to insist on enforcement" of term requiring that lease dates be confirmed in writing, defendants could not thereafter claim that "failure to satisfy this condition precludes a determination of a beginning date of the lease, where the subsequent conduct of the parties has evinced a mutual understanding of that date"); *Snowville Subdivision Joint Venture Phase I v. Home S&L of Youngstown*, 8th Dist. Cuyahoga No. 96675, 2012-Ohio-1342, ¶ 22 (saving and loan's acceptance of extension fee could constitute waiver of requirement that no default existed at the time option to extend maturity date of loan was exercised).   Whether a party has waived a contract term is a question of fact.   *Monroe Excavating, Inc. v. DJD&C Dev. Inc.*, 7th Dist. Mahoning No. 10 MA12, 2011-Ohio-3169, ¶ 40. The record reflects that when Nee initially contacted State Industries to determine what he needed to do to submit a warranty claim, he was told by State Industries' representative to send in "proof of purchase," not "a Bill of Sale."   It is undisputed that based upon the information Nee submitted to Edelman, Nee received a replacement water heater, and Edelman received a credit for the replacement water heater it provided to Nee after submitting the warranty claim.   State Industries' corporate representative further acknowledged that a valid warranty claim was submitted with respect to 2003 water heater.

purchasing a home from its prior owner," he was not a "buyer" within the meaning of R.C. 1302.01(A)(1) and, therefore, was not entitled to enforce any express warranty associated with the 2003 water heater under R.C. 1302.26.

{¶44} Under R.C. 1302.26, an express warranty is created when an "affirmation of fact or promise" is "made by the seller to the buyer." However, the fact that Nee was not the original "buyer" of the water heater to whom the "affirmation of fact or promise" was made is not determinative of whether he is entitled to enforce the express warranty under R.C. 1302.26.

{¶45} Under Ohio's Uniform Commercial Code, in the absence of a contractual limitation on the right to transfer, a buyer or seller may assign any rights under a contract "except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on the other party by the contract, or impair materially the other party's chance of obtaining return performance." R.C. 1302.13(B)(1); *see also* 2A *Lawrence's Anderson on the Uniform Commercial Code*, Section 2-210:53, 119 (3d Ed.2008) ("a buyer may assign its rights under a warranty prior to breach").

{¶46} There is nothing in the water heater warranty that precludes its transfer or assignment to subsequent owners. The warranty refers to "you" and "the consumer" in defining the parties' rights under the warranty; it is not limited to the "original purchaser." There is nothing in the record that suggests that assignment of the water heater warranty to Nee would "materially change" any duty of State Industries, "increase materially" the

burden or risk imposed on State Industries, or "impair materially" State Industries' "chance of obtaining return performance." In addition, Nee presented evidence that State Industries anticipated its warranty would be transferred to, and enforced by, subsequent owners. State Industries' corporate representative, Amy Hopkins, testified that State Industries does not require a consumer to be the original purchaser of a water heater to submit a valid warranty claim and that State Industries has historically honored water heater warranty claims submitted by subsequent owners.

{¶47} However, simply because a warranty may be transferred to a subsequent owner does not necessarily mean that such a transfer has occurred. There must be some transfer of the warranty or assignment of rights under the warranty to entitle the subsequent owner to enforce the warranty. *See, e.g., Gold'n Plump Poultry, Inc. v. Simmons Eng. Co.*, 805 F.2d 1312, 1316 (8th Cir.1986) (Applying Minnesota's version of UCC 2-210, "a subsequent purchaser of a warranted article is not automatically entitled to a cause of action against the original seller for breach of warranty. There must be a contract of assignment of rights to entitle the subsequent purchaser to this cause of action."), citing 8 Williston, *A Treatise on the Law of Contracts,* Section 998 (3d Ed.1961 & Supp.1985); *Collins Co. v. Carboline Co.*, 125 Ill.2d 498, 515, 532 N.E.2d 834 (1988) ("[T]he assignee of a warrantee's rights under an express warranty, if the assignment is otherwise valid, succeeds to all those rights and thus stands in privity with the warrantor. * * * [W]hen one considers that an express warranty is merely a form of contractual undertaking, it becomes perfectly logical to permit rights under the warranty to be

assigned in the same way as other contract rights if they do not fall within one of the UCC's exceptions to assign-ability."); *see also* 3 *Lawrence's Anderson on the Uniform Commercial Code*, Section 2-314:379, 625-26 (3d Ed.2009) ("A person satisfies the requirement of privity with the defendant when that person is the assignee of the rights of a person who was in privity with the defendant.").

{¶48} An assignment is "a transfer of one's rights to something to another." *Quantum Chem. Corp. v. Mobil Oil Corp.*, 1st Dist. Hamilton Nos. C-940357 and C-940395, 1995 Ohio App. LEXIS 4557, *7-8 (Oct. 18, 1995), citing 6 Ohio Jurisprudence 3d, Assignments, Section 1 (1978). A valid assignment may be made by any words or actions that demonstrate an intent on the part of the assignor to assign the rights in question, an intent on the part of the assignee to be assigned the rights in question, and the exchange of valuable consideration. *See, e.g., Langhals v. Holt Roofing Co.*, 47 Ohio App.3d 114, 116, 547 N.E.2d 401 (6th Dist.1988), citing *Morris v. George Banning, Inc.*, 49 Ohio Law Abs. 530, 533, 77 N.E.2d 372 (2d Dist.1947).

{¶49} In opposing State Industries' motion for summary judgment and in support of his own motion for partial summary judgment, Nee presented evidence that when he purchased the home (and the 2003 water heater), he received the warranty documentation for the 2003 water heater. He also presented evidence that he had discussions with Dunipace, prior to his purchase of the home (and water heater), regarding the failure of the prior water heater and the replacement of that water heater with the 2003 water heater pursuant to the home warranty Dunipace had obtained when she listed the home for sale.

Based on this evidence, we find that a genuine issue of material fact exists as to whether Dunipace assigned or transferred her rights in the warranty to Nee when he purchased the home (and the 2003 water heater) from her. The trial court, therefore, erred in granting summary judgment in favor of State Industries on Nee's breach of warranty claim. Nee's second assignment of error is sustained.

**CSPA Claim**

{¶50} Nee's third and fourth assignments of error involve his CSPA claim. In his third assignment of error, Nee argues that because the water heater warranty was transferable, the trial court erred in determining that he could not bring a CSPA claim based on a breach of warranty. In his fourth assignment of error, Nee contends that the trial court erred in determining as a matter of law that State Industries did not engage in any unfair or deceptive acts or practices in connection with a consumer transaction with respect to his warranty claim.

{¶51} CSPA prohibits a supplier from committing "an unfair or deceptive act or practice in connection with a consumer transaction" whether it occurs before, during, or after the transaction. R.C. 1345.02(A). A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, *whether or not the person deals directly with the consumer*." (Emphasis added.) R.C. 1345.01(C). A "consumer" is "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A "consumer transaction" is "a sale, lease, assignment, award by chance, or *other transfer* of an item of goods, a service, franchise,

or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." (Emphasis added.) R.C. 1345.01(A).

{¶52} Nee contends that because he entered into an agreement to purchase the home from Dunipace in April 2003, before the prior water heater began leaking, Dunipace was "acting for [Nee]" and "purchased the 2003 Water Heater on [Nee's] behalf" when she replaced the prior leaking water heater with the 2003 water heater, such that Nee was the "true consumer" entitled to bring a CSPA claim for breach of the water heater warranty. State Industries, on the other hand, argues that because Nee did not himself purchase the 2003 water heater from State Industries, but rather, became the owner of the 2003 water heater when he and his wife purchased the home from Dunipace, Nee is not a "consumer" and did not engage in a "consumer transaction" with respect to the 2003 water heater. As such, State Industries contends, Nee's CSPA claim fails as a matter of law.

{¶53} We agree that Nee was not a "consumer" involved in a "consumer transaction" with State Industries with respect to the purchase of the 2003 water heater in May 2003. There is no evidence Nee was at all involved in the original purchase or installation of the 2003 water heater. There is likewise no evidence that Dunipace was acting on behalf of Nee or representing Nee when the 2003 water heater was installed pursuant to the home warranty Dunipace purchased when she listed her home for sale.

{¶54} State Industries' argument, however, addresses only one of the transactions involved in this case. This case involves two transactions: (1) the initial purchase of the 2003 water heater and (2) the 2009 transaction in which Nee sought to enforce the terms of the warranty and acquired a replacement water heater in exchange for a required payment of $80.81. Although Nee was not a "consumer" involved in a "consumer transaction" with respect to the original purchase of the 2003 water heater, this does not preclude him from being a "consumer" involved in a "consumer transaction" with State Industries with respect to his 2009 warranty claim and the "other transfer" of the FVIR replacement water heater to him following the submission of his warranty claim. There is no dispute that the "transfer" of the replacement FVIR water heater to Nee was for "primarily personal, family, or household" purposes. We find that reasonable minds could conclude that Nee was a "consumer," that State Industries was a "supplier," and that they were involved in a "consumer transaction" within the meaning of CSPA with respect to Nee's 2009 warranty claim and his receipt of the FVIR replacement water heater.

{¶55} Nee's CSPA claim is premised on State Industries' alleged failure to honor the terms of the water heater warranty and its allegedly "unfair and deceptive practices" in handling his warranty claim. A manufacturer's failure to honor an express warranty can constitute an unfair or deceptive act or practice under CSPA. *See, e.g., Layne v. McGowen*, 2d Dist. Montgomery No. 14676, 1995 Ohio App. LEXIS 2120, *15 (May 24, 1995); *Brown v. Lyons*, 43 Ohio Misc. 14, 19-20, 332 N.E.2d 380 (C.P.1974) ("Failure by

a supplier in connection with a consumer transaction to honor express warranties, constitutes deceptive acts and practices in violation of the Ohio Consumer Sales Practices Act."); R.C. 1345.02(B)(10) (unfair or deceptive act or practice includes supplier's representation that "a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false"). Likewise, a "knowing breach of contract" may constitute a violation of CSPA. *See, e.g., Lump v. Best Door & Window, Inc.*, 3d Dist. Logan Nos. 8-01-09 and 8-01-10, 2002 Ohio App. LEXIS 1381, *19 (Mar. 27, 2002) ("While * * * not every breach of contract will constitute a CSPA violation," under the circumstances, genuine issues of material fact existed as to whether CSPA was violated with respect to breach of contract claims.); *Zimmerman v. U.S. Diamond & Gold Jewelers, Inc.*, 2d Dist. Montgomery No. 14680, 1995 Ohio App. LEXIS 901 (Mar. 8, 1995) (where it was undisputed that supplier refused to deliver ring to plaintiff for the stated price, trial court did not err in finding that supplier violated R.C. 1345.02(A)).

{¶56} State Industries argues that, even if the trial court erred in ruling that it owed no obligation to Nee because the water heater warranty had expired by the time Nee had asserted his warranty claim, the trial court's entry of summary judgment in favor of State Industries should still be affirmed because State Industries "fully performed its obligations under the Warranty when [Nee] was provided the 2009 Water Heater containing the FVIR safety design." We disagree.

**{¶57}** State Industries asserts that because of changes in national safety standards that mandated the incorporation of FVIR technology in its water heater design, it no longer made a "current model water heater" of "equal quality" as the 2003 water heater that it could provide to Nee when he submitted his warranty claim in 2009. Because Nee arguably received "more" than he was entitled to under the warranty, i.e., a new model water heater with a new safety feature and a new warranty, State Industries argues that it was entitled to charge him for it.

**{¶58}** That State Industries could no longer supply a replacement water heater that it deemed to be of "equal quality" to the 2003 water heater, i.e., a non-FVIR water heater, when Nee submitted his warranty claim in 2009 did not relieve State Industries of its obligation under the warranty to provide a replacement water heater. It is expected, as the years progress, that "current" models will be improved over prior models and will have additional features, including, in some instances, new and improved safety features.

**{¶59}** We find that Nee has presented evidence raising a genuine issue of material fact as to whether State Industries breached the warranty and violated CSPA by charging him a fee for a replacement FVIR water heater that was not specified in the warranty. Accordingly, the trial court erred in granting summary judgment in favor of State Industries on Nee's CSPA claim. *Miner v. Jayco, Inc.*, 6th Dist. Fulton No. F-99-001, 1999 Ohio App. LEXIS 3944, *16-19 (Aug. 27, 1999). Nee's third and fourth assignments of error are sustained in part.

**Breach of Contract**

{¶60} In his fifth assignment of error, Nee contends that the trial court erred in denying his motion for partial summary judgment on his breach of contract claim.

{¶61} To establish a breach of contract, a plaintiff must demonstrate: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) plaintiff's damage or loss. *On Line Logistics, Inc. v. Amerisource Corp.*, 8th Dist. Cuyahoga No. 82056, 2003-Ohio-5381, ¶ 39, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). Nee's breach of contract claim involves virtually the same facts, arguments, and issues as his breach of warranty claim. Accordingly, for the reasons stated above, we find that there are disputed issues of material fact that preclude summary judgment on Nee's breach of contract claim. Nee's fifth assignment of error is overruled.

**Agency**

{¶62} In his final assignment of error, Nee contends that the trial court erred in denying his motion for partial summary judgment on the issue of State Industries' "agency relationship with Edelman." Nee contends that based on principles of actual and apparent authority, Edelman was acting as State Industries' agent in collecting FVIR upcharges from customers on warranty claims, including "inflated" FVIR upcharges in excess of the FVIR upcharges charged by State Industries, such that State Industries should be "legally responsible" for Edelman's actions.

{¶63} An agency relationship is a consensual relationship pursuant to which the agent has the power to bind the principal, and the principal has the right to control the agent. *Ferrell v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 95649, 2011-Ohio-3385, ¶ 26, quoting *Remy v. Graszl*, 5th Dist. Richland No. 98 CA 64, 1998 Ohio App. LEXIS 6530, *5 (Dec. 23, 1998). Agency can be based on actual authority or apparent authority. Express authority is authority that is "'directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms.'" *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574, 575 N.E.2d 817 (1991), quoting *Stevens v. Frost*, 140 Me. 1, 7, 32 A.2d 164 (1943). "[I]mplied authority may also arise from the express delegation of actual authority and * * * carries with it the power to do all that which is reasonably necessary to carry into effect the power actually conferred." *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608, 590 N.E.2d 254 (1992), citing *Spengler v. Sonnenberg*, 88 Ohio St. 192, 200-201, 102 N.E. 737 (1913); *see also Crnic v. Am. Republic Ins. Co.*, 8th Dist. Cuyahoga No. 89021, 2007-Ohio-5439, ¶ 24. Apparent authority arises when (1) "the principal held the agent out to the public as possessing sufficient authority to act on his behalf," (2) a "person dealing with the agent knew these facts," and (3) the person "acting in good faith had reason to believe that the agent possessed the necessary authority." *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 41, citing *Master Consol. Corp.* at syllabus. The "primary distinguishing characteristic of an agency relationship" is the

principal's right "to control the conduct of the agent when the agent is performing work on behalf of the principal."   *Clark v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 78854, 2001 Ohio App. LEXIS 3832 (Aug. 30, 2001), quoting *Costell v. Toledo Hosp.*, 98 Ohio App.3d 586, 649 N.E.2d 35 (6th Dist.1994).   The party alleging the existence of an agency relationship bears the burden of proving that such a relationship exists. *Ferrell* at ¶ 26, citing   *Gardner Plumbing, Inc. v. Cottrill*, 44 Ohio St.2d 111, 115, 338 N.E.2d 757 (1975), and *Remy, supra.*

{¶64} Nee presented evidence that Edelman was an authorized distributor of State Industries' water heaters.   However, the existence of a manufacturer-distributor relationship, in and of itself, does not necessarily make the distributor an agent of the manufacturer.   *See, e.g., Premier Business Group, LLC v. Red Bull of N. Am., Inc.*, N.D.Ohio No. 08-CV-01453, 2009 U.S. Dist. LEXIS 91647, *16-19 (Sept. 30, 2009). Nee also presented evidence that Edelman was expressly authorized by State Industries to process warranty claims and to collect a $60 FVIR upcharge when a non-FVIR water heater was replaced with a FVIR water heater under the warranty.   State Industries, however, presented evidence that Edelman lacked authority to approve warranty claims on its behalf and disputed that Edelman was acting as State Industries' agent in collecting the FVIR upcharge, including any amounts in excess of the $60 FVIR charge State Industries assessed against the distributor.   Based on our review of the record, we find that genuine issues of fact exist for the jury to resolve regarding State Industries' right to control Edelman's conduct and the scope of Edelman's actual or apparent

authority in processing warranty claims for State Industries. Accordingly, the trial court did not err in denying Nee's motion for partial summary judgment on the agency issue. Nee's sixth assignment of error is overruled.

{¶65} Judgment affirmed in part and reversed in part.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
TIM McCORMACK, J., CONCUR